CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

4/13/2020

JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
        DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

| | |
|---|---|
| **STUDENT A**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. <u>6:20CV00023</u> |
| v. | **JURY TRIAL DEMANDED** |
| **LIBERTY UNIVERSITY, INC., d/b/a LIBERTY UNIVERSITY**, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, Student A ("Plaintiff"), individually and on behalf of all others similarly situated (collectively, the "Class," as more fully defined below), brings this class action complaint against Defendant Liberty University, Inc., d/b/a Liberty University ("Liberty," the "University," or "Defendant").  Plaintiff makes the following allegations upon personal knowledge as to Plaintiff's own acts, and upon information and belief and Plaintiff's attorneys' investigation as to all other matters, alleging as follows:

### I.      NATURE OF THE ACTION

1.      This is a class action brought on behalf of all people who paid fees to cover the costs of services and/or activities (including parking, room and board, campus fees, activity fees, athletic fees, and other fees) for the Spring 2020 academic semester at Liberty University and who, because of the University's response and policies relating to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefits of the services and activities for which their fees were paid, without having those fees refunded to them.

2.      In or around March 2020, Liberty University announced that because of the global COVID-19 pandemic, it "will transition most residential classes to an online format starting Monday, March 23."  Students who lived in on-campus housing were not expressly forced to move out of their housing—indeed, the University purports to remain open[1] while classes have moved online and the University's President has tried to downplay the significance of the pandemic.

3.      In a March 13, 2020 interview, the University's President, Jerry Falwell Jr., stated that people are "overreacting," compared COVID-19 to the flu, insinuated that the overreaction was politically motivated, and even speculated the virus may have been a Christmas present from North Korea and China.[2]

4.      In a March 15 twitter thread, President Falwell Jr. called one parent a "dummy" for raising concerns about spreading infection:



---

[1]  To be clear, this Complaint does not seek to criticize Liberty's decision to move classes online. Indeed, the Centers for Disease Control and Prevention recommends that everyone should "stay home as much as possible" and "put distance between yourself and other people."  *See* Protect Yourself, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last accessed April 9, 2020).

[2]  For a link to the video, *see* https://www.mediamatters.org/coronavirus-covid-19/fox-guest-jerry-falwell-jr-speculates-north-korea-got-together-china-create

5.      Despite efforts to downplay the pandemic, the University has stopped providing the services and activities for which Plaintiff and the other Class members paid fees.

6.      As stated on its website, the University made several changes: The school prohibited gatherings of ten or more people; converted all meals to take-out only; closed all indoor recreation and fitness centers; moved all Convocations and Campus Church online; ended student organization activities; suspended team sports; closed campus to visitors; encouraged work from home for staff; and postponed commencement. In other words, the University's statement that it is "open" is an illusion being put forth to try to keep money that should be returned to students and their families.

7.      The University further announced, that if "residential students choose to return to Lynchburg, most will be able to resume their classes in the online format or they can choose to remain where they are and complete classes online."[3]

8.      For all practical purposes, students who were living on Liberty's campus have been forced to make the difficult decision of whether to stay on or return to a campus that has effectively been shut down, or to move home and sacrifice the amounts they have paid for room and board and other campus fees.  Given the fact that Liberty had moved all of its classes online and suspended campus services and activities, combined with the very real health risks incumbent with remaining in the residential campus environment during the pandemic, not to mention the stay-at-home orders all around the country, including in Virginia, most students chose to leave campus. After moving off campus (or no longer coming to campus to attend classes), the students also no

---

[3] Liberty University remains open; most residential classes go online, Liberty News (Mar. 16, 2020), https://www.liberty.edu/news/index.cfm?PID=18495&MID=379063.

longer received or could not otherwise obtain the services and activities from Liberty for which their fees for the semester paid.

9.     Students who do not live on-campus at Liberty, but who commute to the Liberty campus to attend classes, no longer have a need to come to campus.  Further, the services and activities that were previously available to them on-campus are no longer available.

10.     Despite ending on-campus services and activities for the rest of the semester and leaving students with no safe and practical choice other than moving out of their on-campus housing and discontinuing coming to Liberty's campus, Liberty has refused to refund to students and their families the unused portions of the fees that they each paid to cover the costs of certain on-campus services and activities, which are no longer available to students.  Indeed, to the extent that Liberty has offered any refunds to Class members, those refunds have been a mere fraction of what Liberty actually owes Plaintiff and the other Class members for the unused (and unusable) portions of these fees that they paid to Liberty for services that Liberty has discontinued, thereby causing material financial losses to the students and their families.  Liberty University is, in a very real sense, profiting from the COVID-19 pandemic—keeping its campus and campus services "open" as a pretext to retain Plaintiff's and the other Class members' room, board, and campus fees, despite no longer having to incur the full cost of providing those services, all the while putting students' finances and health at risk.

11.     Other higher education institutions across the United States that also have switched to e-learning and have requested or permitted students to leave campus have recognized the upheaval and financial harm to students and their families from these decisions and have provided appropriate refunds.  These institutions recognize that because they are unable to provide the full

slate of services for which the students paid, the institutions have no legal or ethical basis to retain the students' money.   Liberty, unfortunately, has taken the opposite approach.

12.     Rather than providing full and fair refunds, Liberty, instead, chose to offer a $1,000 credit only to those students who chose not to return to campus residence halls, and this credit would be applied toward Fall 2020 charges. Students who choose not to return in the Fall will not receive any credit.  Students who do not live in residence halls will not receive any credit. Anyone wanting that credit would have had to make their decision by March 28, 2020.

13.     Accordingly, Liberty has improperly retained monies paid by Plaintiff and the other Class members for fees, while Plaintiff and the other Class members can no longer obtain the value or benefit of the services for which they paid.

14.     Indeed, even if Liberty claims that it had no choice, or that students could risk their health and decide whether to remain on campus, it nevertheless has improperly retained funds for services and activities it is not providing.  No matter the excuse, Liberty's actions are unlawful and unfair, and both law and equity demand disgorgement of the fees and monies paid.

15.     Plaintiff, individually and on behalf of the other Class members, brings this class action for injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Liberty's improper conduct, namely retaining the costs and fees paid by Plaintiff and the other Class members, while forcing or encouraging Plaintiff and the other Class members (or the students on behalf of whom Plaintiff and other Class members paid these expenses) to move off campus and cease coming to campus to attend class.

16.     Despite online petitions, online comments and individual requests from families, the University has refused and continues to refuse to provide proper refunds.

17.     This lawsuit seeks disgorgement of the pro-rated, unused amounts of fees that Plaintiff and the other Class members paid, but for which they (or the students on behalf of whom they paid) will not be provided the benefit.

## II.     PARTIES

### A.   *Plaintiff*

18.     Student A is a U.S. citizen, and a citizen of a state other than Virginia.  Student A is a Liberty University student who paid fees for the Spring 2020 semester, the benefits of which Student A will no longer receive, because Liberty transitioned all of its classes online, shut down on-campus services and activities, and made it so that Plaintiff has no reason to go to campus (and, in fact, it would be dangerous for Plaintiff to do so).  Plaintiff has not been offered any refund of the fees paid for the Spring 2020 semester.

19.     Plaintiff proceeds as Student A due to legitimate fear of retaliation and harassment, both from Liberty and its supporters, for proceeding with this claim. Plaintiff is concerned about negative treatment from the University that could come in the form of negative treatment in the classroom or possibly even expulsion.  Liberty's President, Mr. Falwell, has already shown his willingness to use social media, for which he has a large following, to criticize and invite scorn upon anyone who criticizes him, Liberty, or Liberty's actions regarding the COVID-19 pandemic. Liberty's Senior Vice President of Communications contacted one student—and involved that student's employer—who spoke out against the University and, in the student's words, "chided" him for his comments. Liberty has further shown its willingness to retaliate against anyone who criticizes Liberty's COVID-19 response by seeking and obtaining arrest warrants against members of the media who participated in stories critical of Liberty. Upon information and belief,

individuals who have made social media statements or provided quotes in news stories have received harassing or intimidating messages from Liberty supporters and critics alike.

    **B.**   *Defendant*

    20.    Liberty University, Inc. is a Virginia a nonstock corporation formed in 1972, with its principal place of business at 1971 University Boulevard, Lynchburg, Virginia 24515.  The entity operates as Liberty University, an accredited evangelical liberal arts institution based in Lynchburg, Virginia, with seventeen colleges and schools.

### III.    JURISDICTION AND VENUE

    21.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which one or more of the other members of the Class is a citizen of a State different from the Defendant.  Namely, Defendant is a Virginia citizen and, on information and belief, other members of the Class—including Plaintiff— are citizens of other states.

    22.    This Court has personal jurisdiction over Defendant because it is a citizen of Virginia and committed its wrongful acts and omissions in Virginia.

    23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which the District is located.

### IV.    FACTUAL ALLEGATIONS

    **A.**   *Plaintiff and the Other Members of the Class Paid the Costs of Fees for the Spring 2020 Semester*

    24.    Plaintiff and the other Class members are people who paid the cost of various fees for the Spring 2020 semester at Liberty University.

25.     Spring semester classes at Liberty University began on or about January 13, 2020. The last day of classes is scheduled for April 28, 2020, and final exams for the semester are scheduled to end on or around May 5, 2020.

26.     Residence halls opened for new students for the semester on January 9, 2020, and for returning students on January 10, 2020.  Prior to the COVID-19 outbreak and announcements, students were required to move out of their residence halls on or about May 6, 2020.

27.     Plaintiff and the other Class members paid the cost of fees for the Spring 2020 semester.  These fees included various campus fees and the cost of room and board.

28.     Approximate fees at Liberty University for the 2019-2020 academic year for undergraduate and graduate students are as follows:

- Dining Plans:  $3,780 - $4,450

- Housing:  $4,750 - $8,000 per year.

- Auto Registration Fee (Optional):  $285

- Student Health Fee:  $340

- Course Fees:  Vary per program

- Activity/Student Center Fee:   $770 (undergraduate); $285 per semester (graduate)

- Rawlings School of Divinity Activity Fee:  $50 (per semester)

- School of Law Activity Fee:  $400

- Liberty University College of Osteopathic Medicine Activity Fee:  $300; Lab Fee:  $525; Insurance Fee:  $300; First Year Fee:  $1,750.

29.     Some of the other Class members also purchased parking decals, which Liberty has refused to refund, even though the parking services for which they paid are no longer available to them.

30.     In return for these payments, Liberty agreed to provide the services or activities that each fee was intended to cover.

31.     The fees listed and described in the paragraphs above are provided by way of example; total damages amounts, which may include other fees that are not listed herein but that were not refunded, will be proven at trial.  The fees for which this action seeks relief do not presently include tuition costs.

**B.      *In Response to COVID-19, Liberty Fails to Protect Its Students, But for Those Who Chose to Leave Campus, Their Fees Are Not Refunded.***

32.     Beginning in January 2020, COVID-19 began presenting American cities and universities with an unprecedented, modern-day challenge:  maintaining the fabric of our economy and communities while protecting American lives.

33.     By March 2020, several U.S. cities, states, and municipalities were calling for social distancing to slow the spread of COVID-19.  Eventually, some cities, states, and municipalities ordered citizens and residents to "shelter-at-home," effectively requiring them to stay home, other than to receive essential services.

34.     Liberty University's reaction to the life-threatening COVID-19 pandemic was glacially slow, to say the least.

35.     Indeed, as Liberty's 2020 spring break was coming to a close, Liberty—evidently ignoring scientific analysis, the Centers for Disease Control and Prevention, and conventional wisdom—decided to place its students at severe physical risk of COVID-19 contagion by reopening its campus for students to return.  And this despite reports that there were several

potential cases of COVID-19 on Liberty's campus.  In reporting on Liberty's course of action, *The New York Times* noted that for "critical weeks in January and February," certain people dismissed the seriousness of the pandemic, including Liberty University President Jerry Falwell Jr., who called it an "overreaction," driven by political motivations.[4]

36.    This set off criticism based on safety concerns, which the *New York Times* described as a "firestorm."[5]

37.    Lynchburg Mayor Treney Tweedy issued a statement expressing "surprise[]" and disappoint[ment]" at learning that University President Jerry Falwell, Jr. had decided to allow students back on campus "in the midst of public health crisis."[6]

38.    Students and other members of the Liberty community expressed concern that, if they stayed on campus or in student residence halls, the living conditions would threaten their safety and expose them to COVID-19.[7]

---

[4]  Liberty University Brings Back Its Students, and Coronavirus Fears, Too, The New York Times (Mar. 29, 2020), https://www.nytimes.com/2020/03/29/us/politics/coronavirus-liberty-university-falwell.html.

[5]  *Id*.

[6] Lynchburg leaders 'disappointed' in Liberty's 'reckless' decision to welcome students back (Elizabeth Tyree), ABC 13 News (Mar. 24, 2020), https://wset.com/news/coronavirus/lynchburg-leaders-could-not-be-more-disappointed-in-liberty-welcoming-students-back.

[7]  University employee pleaded, "we need help to go home."  *See infra*, note 3; Briana Sacks, Liberty University Is Staying Open During the Coronavirus Pandemic And Students Are Confused and Concerned, Buzzfeed News (Mar. 26, 2020), https://www.buzzfeednews.com/article/briannasacks/coronavirus-liberty-university-jerry-falwell.

39.     On March 12, 2020, Governor Northam declared a state of emergency and outlined measures to combat COVID-19.[8]   On March 30, 2020, he issued a "stay at home" order for all Virginians.[9]

40.     Starting on or about March 23, 2020, Liberty University finally transitioned most of its residential classes to an online digital format.[10]

41.     Liberty, however, also informed its students that the Liberty campus, including the residence halls, remained open.  Liberty's decision to tell its students that they could remain on campus to continue to use their housing, meal plans, parking, and the benefits of the services and activities for which their fees paid, was not only illusory and empty—because there were no more on-campus classes—but it was also extremely dangerous and irresponsible.

42.     On information and belief, a campus-wide email sent on March 17, during spring break, by Liberty's office of residential life said, "While students are currently allowed to return to live in the residence halls, we are encouraging you to consider staying home."  However, on information and belief, three days later, the same office sent an email stating, "The intent of encouraging students to consider remaining at home was to simply advise students to think carefully about their choice and discuss the matter with their parents.  It was not an endorsement of any particular course of action."[11]

---

[8]  Governor Northam Declares State of Emergency, Outlines Additional Measures to Combat COVID-19 (Mar. 12, 2020), https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-853537-en.html.

[9]  Gov. Northam issues 'stay at home' order for Virginians amid COVID-19 outbreak (Caleb Stewart), WHSV 3 ABC (Mar. 30, 2020), https://www.whsv.com/content/news/Gov-Northam-plans-major-announcement-on-Virginias-COVID-19-response-569222141.html.

[10]  Liberty University remains open; most residential classes go online, Liberty News (Mar. 16, 2020), https://www.liberty.edu/news/index.cfm?PID=18495&MID=379063.

[11]  Rachel M. Cohen, Liberty University is resisting pressure from students to refund room and board costs during the coronavirus crisis, https://www.msn.com/en-us/news/us/liberty-

43.     Put simply, even when Liberty claims that remaining on-campus and using on-campus services is purportedly a viable option, residence halls at Liberty are not designed to safely house students in the event of a pandemic and, in order to stay safe, a vast majority of the students must move out in order to practice safe, social distancing in accordance with recommendations by the Centers for Disease Control and Prevention ("CDC").  For Liberty students who do not live on-campus, continuing to come to campus while taking online courses is pointless and dangerous.

44.     While social distancing is recommended by healthcare professionals and even the CDC, the resulting impact to the economy—and individual families' wallets—cannot be understated.[12]  Rather than acknowledge the difficult financial stresses that COVID-19 has placed on families, Liberty University students and their families were expected to bear the brunt of the cost.

45.     Liberty University did announce that, as a "customer service measure," it would offer a limited credit to certain students who did not return to their on-campus residence hall for the remainder of the Spring 2020 semester.  Returning students were eligible to receive a $1,000 credit toward their Fall 2020 charges.  However, for any student who is not graduating in the 2020 class, the credit is not available if they choose not to return to Liberty University for the Fall 2020 semester.  Graduating students are eligible to have the $1,000 credited to their accounts.  In all

---

university-is-resisting-pressure-from-students-to-refund-room-and-board-costs-during-the-coronavirus-crisis/ar-BB11Oeo2.

[12]  Heather Long and Alyssa Fowers, A record 3.3 million Americans filed for unemployment benefits as the coronavirus slams economy, Washington Post (Mar. 26, 2020), https://www.washingtonpost.com/business/2020/03/26/unemployment-claims-coronavirus-3-million/; Anthony Antoine, Jobless claims spike in Virginia after coronavirus outbreak; here's who is currently hiring, NBC 12 (Mar. 26, 2020), https://www.nbc12.com/2020/03/26/companies-who-are-currently-hiring-amid-coronavirus-crisis/ ("A federal report shows jobless claims in Virginia spiked by nearly a factor of 20 as parts of the economy slowed or shuttered due to the coronavirus pandemic.")

cases, the credit is only available if students made an affirmative decision not to return to their on-campus residence halls and filled out a form informing the University by March 28, 2020.[13]  On information and belief, many students missed the deadline because it was not clearly communicated or because Liberty did not provide adequate time and information to make an informed decision.

46.     In any event, the credits that Liberty is offering to its students and their families are insufficient because they do not return to them the full pro-rated, unused portion of their room and board payment for the semester.  Further, they are insufficient for students who are not graduating but who do not intend to return to Liberty University for the Fall 2020 semester.

47.     Aside from the woefully insufficient credit Liberty is offering to students and their families for Spring 2020 room and board payments, Liberty has refused to provide its students and their families with *any* refund of the miscellaneous campus fees they paid for the Spring 2020 semester that were unused or for which they had not received a benefit.

48.     Liberty has retained the value of monies paid by Plaintiff and the other Class members for room, board, and other campus fees, while failing to provide the services and activities for which those fees were paid.

49.     The Federal Government has also responded to the COVID-19 pandemic in ways that benefit Liberty and help cover the costs associated with the disruption.  Specifically, $14 billion of stimulus funds have been set aside to aid institutions of higher education.  On information and belief, Liberty will receive more than *$15 million* in stimulus funds.  The stimulus monies are designed to help students.  It would be inequitable for Liberty to retain the value of these stimulus

---

[13]  Liberty University Extending Room and Board Credit (Mar. 27, 2020), https://www.liberty.edu/index.cfm?PID=572&Announce_ID=32669.

funds while, at the same time, ceasing to provide services to students and not returning the full, pro-rated amounts that students and their families paid for these services;

50.     Class members have demanded that Liberty return the unused amounts of monies that they paid for room, board, and other campus fees, through a number of channels, including through online forums.[14]  Liberty has rejected each such request, making clear that its policy is to provide only a minimal credit (not a full return of the pro-rated, unused amounts) for room and board, and to not return *any* amounts of the other campus fees.

51.     Liberty has attempted to stifle dissent regarding its unreasonable, outlier position, that it will not provide adequate refunds.  As described in Paragraph 4, above, Mr. Falwell called one Liberty parent a "dummy" for expressing concerns regarding the spread of COVID-19.

52.     In another incident, Scott Lamb, Liberty University's senior Vice President for University Communications, called Calum Best (a student leader in Liberty's Student Government Association and an outspoken critic of Liberty's COVID-19 response policies), after 8:00pm, to chide Best for a personal Facebook post in which Lamb said Best had taken Falwell Jr.'s comments out of context.[15]  Best said the following about the interaction:

---

[14]  *See, e.g.,* Clay Robinson, Number of students demanding refunds climbs amid coronavirus closures (Mar. 17, 2020), available at https://www.campusreform.org/?ID=14551.

[15]  *See* Calum Best, My late-night phone call with a Liberty University Senior Vice President (Mar. 26, 2020), https://medium.com/@calumbest1/my-late-night-phone-call-with-a-liberty-university-senior-vice-president-e85cb68f4f0.



53.     Further, on April 7, 2020, Falwell Jr. said that arrest warrants had been issued for journalists from *The New York Times* and *ProPublica* after each of those outlets published articles critical of his decision to partially reopen Liberty's campus amid the coronavirus pandemic.

54.     Through this lawsuit, Plaintiff, individually and on behalf of the other Class members, seeks entry of an Order requiring Defendant's disgorgement of the pro-rated, unused portion of fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services and activities ceased being provided (or students could safely come to campus to partake in those services and activities).

## V.     CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this case individually and, pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4) for damages at law, equitable relief, disgorgement, and other damages on behalf of a Class, defined as:

> All people—whether students, or their parents or guardians—who paid fees (including but not limited to campus fees, room, board, parking, and other fees as broadly defined herein) for or on behalf of students enrolled in live, in-person classes at Liberty University for the Spring 2020 semester (the "Class").

56.     Excluded from the Class are Liberty University and any of its respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

57.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

58.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  The precise number of Class members is unknown to Plaintiff, but may be ascertained from Defendant's records and, based upon publicly available information, is presumed to be not less than 14,000 people.  Class members may be notified of the pendency of this action by recognized, Court-approved, notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

59.     **Commonality—Federal Rule of Civil Procedure 23(a)(2); Predominance— Federal Rule of Civil Procedure 23(b)(3).**  This action involves questions of law and fact common to the Classes, which predominate over any individual questions, including, without limitation:

    a.     Whether Defendant engaged in the conduct alleged herein;

    b.     Whether Defendant breached its contracts with Plaintiff and the other Class members by retaining fees without providing the services and activities which the fees were intended to cover;

c.     Whether Defendant was unjustly enriched by retaining fees of Plaintiff and other members of the Class without providing the services and activities that the fees were intended to cover;

d.     Whether Defendant committed conversion by retaining fees of Plaintiff and other members of the Class without providing the services and activities that the fees were intended to cover;

e.     Whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

f.     Whether Class members are entitled to declaratory, equitable, or injunctive relief, damages, and/or other relief; and

g.     The amount and nature of relief to be awarded to Plaintiff and the other Class members.

60.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid fees associated with the Spring 2020 semester at Liberty University but were not provided the services and activities that those fees were meant to cover.  Plaintiff and the other Class members suffered damages—namely, the loss of their fees and monies paid—as a direct and proximate result of the same wrongful conduct in which Defendant engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims.

61.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate Class representative because plaintiff's interests do not conflict with the interests of the other members of the Class who plaintiff seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to

prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiff and counsel.

62.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

63.     **Certification of Specific Issues—Federal Rule of Civil Procedure 23(c)(4).**  To the extent a class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

## VI.    CLAIMS ALLEGED

### FIRST CLAIM FOR RELIEF

#### Breach of Contract

64.     Plaintiff repeats and alleges the allegations in Paragraphs 1-63, above, as if fully alleged herein.

65.     Plaintiff brings this claim individually and on behalf of the other Class members.

66.     Plaintiff and the other Class members entered into contracts with Liberty which provided that Plaintiff and the other Class members would pay fees for or on behalf of students, and in exchange, Liberty would provide services and make available activities to students.

67.     Plaintiff and the other Class members fulfilled their end of the bargain when they paid the fees for the Spring 2020 semester.

68.     Liberty breached the contracts when it moved classes online and stopped providing services and activities for which the fees were intended to pay but retained monies paid by Plaintiff and the other Class members, without providing them the benefit of their bargain.

69.     Plaintiff and the other Class members have been damaged—in an amount to be proven at trial—in that they have been deprived of the value of the services and activities the fees they paid were intended to cover, while Liberty retained those fees.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

70.     Plaintiff repeats and alleges the allegations in Paragraphs 1-63, above, as if fully alleged herein.

71.     Plaintiff brings this claim individually and on behalf of the other Class members, and in the alternative to the breach of contract claim (First Claim for Relief), set forth above.

72.     Plaintiff and the other Class members paid fees for or on behalf of students, which were intended to cover services and activities for the Spring 2020 semester.  In exchange, students were entitled to receive those services and activities for the entire semester.

73.     On or about March 23, 2020, Liberty moved classes online and stopped providing services and activities the fees were intended to cover.

74.     Liberty has retained fees paid by Plaintiff and the other Class members, without providing the services and activities for which they paid and, as such, has been enriched.

75.     Liberty has been unjustly enriched by retaining the fees paid by Plaintiff and the other Class members for the semester while not providing services and activities for which those fees paid.  Equity requires Liberty to return the unused, prorated portion of the fees paid by Plaintiff and the other Class members.

## THIRD CLAIM FOR RELIEF

### Conversion

76.     Plaintiff repeats and alleges the allegations in Paragraphs 1-63, above, as if fully alleged herein.

77.     Plaintiff brings this claim individually and on behalf of the other Class members.

78.     Plaintiff and the other Class members have a right to the services and activities that were supposed to be provided in exchange for their payments of fees to Liberty.

79.     Liberty intentionally interfered with the rights of Plaintiff and the other Class members when it moved all classes to an online learning format and discontinued services and activities for which the fees were intended to pay, while retaining the fees paid by Plaintiff and the other Class members.

80.     Liberty deprived Plaintiff and the other Class members of their fees or of the right to the services and activities that their fees were intended to be used for.

81.     Class members demanded the return of the pro-rated, unused fees for the remainder of the Spring 2020 semester.

82.     Liberty's retention of the fees paid by Plaintiff and the other Class members without providing the services and activities for which they paid, deprived Plaintiff and the other Class members of the benefits for which the fees paid.

83.     This interference with the services and activities for which Plaintiff and the other Class members paid damaged Plaintiff and the other Class members in that they paid fees for services and activities that will not be provided.

84.     Plaintiff and the other Class members are entitled to the return of pro-rated, unused portion of the fees paid, through the end of the semester.

## VII.   <u>REQUEST FOR RELIEF</u>

Plaintiff, individually and on behalf of the other members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

a.   Certifying the Class as requested herein, designating Plaintiff as class representative, and appointing the undersigned counsel as Class Counsel;

b.   Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

c.   Declaring that Defendant has wrongfully kept the monies paid for fees;

d.   Awarding Plaintiff and Class members damages in an amount to be proven at trial;

e.   Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused portion of monies paid for fees;

f.   Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

g.   Awarding pre- and post-judgment interest on any amounts awarded; and

h.   Awarding such other and further relief as may be just and proper.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

## VIII.   JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:  April 13, 2020

                             _/s/ E. Kyle McNew_____

E. Kyle McNew (VSB No. 73210)
J. Gregory Webb (VSB No. 38157)
Lisa S. Brook (VSB No. 35661)
**MICHIEHAMLETT**
310 4th Street, NE
P.O. Box 298
Charlottesville, Virginia 22902
Tel.:  434-951-7231
Fax:  434-951-7254
kmcnew@michiehamlett.com
gwebb@michiehamlett.com
lbrook@michiehamlett.com

Adam J. Levitt*
Amy E. Keller*
Laura E. Reasons*
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
lreasons@dicellolevitt.com

Matthew S. Miller*
**MATTHEW S. MILLER LLC**
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Tel.:  312-741-1085
mmiller@msmillerlaw.com

*_Pro Hac Vice_ Motion Anticipated/Pending

***Counsel for Plaintiff and the Proposed Class***