IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| STUDENT A, STUDENT B, STUDENT C, and STUDENT D, individually and on behalf of all others similarly, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 6:20-cv-00023-NKM |
| LIBERTY UNIVERSITY, INC., d/b/a/ LIBERTY UNIVERSITY, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT LIBERTY UNIVERSITY, INC., d/b/a LIBERTY UNIVERSITY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Liberty University, Inc., d/b/a Liberty University ("Liberty" or the "University"), by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, states as follows in support of its motion to dismiss (the "Motion") the First Amended Complaint (ECF No. 17 (the "Amended Complaint")) filed by Plaintiffs Student A, Student B, Student C, and Student D, individually and on behalf of all others similarly situated (collectively, "Plaintiffs").

## I.      INTRODUCTION

In their second attempt to state any claims upon which this Court could grant relief, Plaintiffs, who continue to insist upon remaining anonymous over Liberty's objections and despite *any* showing of cause for secrecy, instead make another non-justiciable political commentary. Indeed, the Amended Complaint contains myriad citations to partisan media accounts assailing the University, its president, and Liberty's response to the unprecedented global COVID-19 crisis. What Plaintiffs again fail to acknowledge, however, is that Liberty provided services for the majority of the Spring 2020 semester, and continued to incur overhead costs throughout the

remainder of the Spring semester (a mere six weeks), even after Liberty was compelled to move classes and convocations online pursuant to Governor Ralph S. Northam's Executive Order Number Fifty-Three, issued on March 23, 2020 (the "Order"). Also conspicuously absent from the Amended Complaint is any recognition of the fact that, in the weeks following Governor Northam's issuance of the Order, Liberty permitted students to stay in the dormitories, as many did, and that Liberty continued to provide core services, including, for example, take-out food service, access to the student health center, WiFi and other utilities, security, library services, computer labs, academic advising, counseling and other student services, parking and many recreational offerings.

Most importantly for purposes of this Motion, Plaintiffs again fail to state any viable causes of action against Liberty. As to Count I, for alleged breach of contract, the Amended Complaint *does not even identify the contract(s),* written or oral, upon which they purport to sue, let alone the provisions purportedly breached. Virginia law, which governs this action, requires dismissal where, as here, the terms of the allegedly breached contract are not sufficiently pled.  Count II, for unjust enrichment, fails because the alleged express contract(s) would govern and because Plaintiffs do not identify which services Liberty allegedly failed to provide or which particular fees Liberty allegedly retained improperly. Count III, for conversion, fails because Plaintiffs do not allege a property right that could form the necessary predicate for such a claim and because Liberty received the fees in good faith and for valuable consideration. Finally, Count IV, Plaintiffs' claim for alleged violation of the Virginia Consumer Protection Act ("VCPA") is barred by the economic loss rule and by the fact that Liberty's statement that it remained open for the Spring 2020 semester is demonstrably true, *not* a fraudulent misrepresentation of fact, as is required to state a claim under the VCPA.

For the reasons detailed herein, Liberty respectfully requests that the Court grant its Motion and dismiss the Amended Complaint with prejudice, as further amendment would be futile.

## II.   <u>FACTUAL BACKGROUND</u>

In response to COVID-19, Liberty, like many universities, transitioned most residential classes to an online format on March 23, 2020, and it took additional precautions in accordance with Governor Northam's Executive Orders. Am. Compl. ¶¶ 2, 7. Contrary to Plaintiffs' assertion that Liberty "effectively . . . shut down" its campus for the remainder of the Spring 2020 semester, Liberty remained operational while complying with Executive Orders 53 and 55.[1] *See id.* ¶ 7 n.3, ¶¶ 8, 42-43. In addition to moving courses online, and in order to comply with Governor Northam's Orders, Liberty reduced capacity in its recreation and fitness centers and then closed them, suspended certain student organization activities and events on campus, and converted dining hall meals to take-out only. Notably, Liberty gave students living on-campus the option to stay on campus in Lynchburg or complete online coursework from their permanent residence. *Id.*   ¶¶ 6-7.

Many students continued to reside on campus after March 23, 2020. As the University's March 16, 2020 press release explained, "[m]any of [Liberty's] international students are simply unable to return to their home countries and other students don't have a place to go, so we must keep our campus residence halls and dining services staffed anyway[.]" *See id.* ¶ 7 n.3 (citing Liberty University remains open; most residential classes go online, *Liberty News* (Mar. 16, 2020), http://www.liberty.edu/news/index.cfm?PID=18495&MID=379063).

---

[1]     Pursuant to Federal Rule of Evidence 201, Liberty requests that the Court take judicial notice of Executive Orders 51, 53, and 55 because they constitute adjudicative facts "that [are] not subject to reasonable dispute." Fed. R. Evid. 201. The Executive Orders are both "generally known within the [this Court's] territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*

The anonymous Plaintiffs—Students A, B, C, and D—vaguely allege that they paid fees for the Spring 2020 semester. *Id.* ¶¶ 18-21. Student A lives off campus and claims to have no reason to return to campus because Liberty transitioned to online courses. *Id.* ¶ 18. Students B, C, and D allegedly paid for on-campus housing, but likewise claim that they have no need to return to campus. *Id.* ¶¶ 18-21. Students B, C, and D further claim that Liberty "encouraged or forced students to move out of their on-campus housing." *Id.* ¶¶ 19-21. Far from "forcing" students to stay home, Liberty's Office of Residential Life sent an email during the University's spring break merely encouraging students "*to consider* staying home." *Id.* ¶ 45 (emphasis added). The Office of Residential Life sent a second email clarifying that "[t]he intent of encouraging students to consider remaining at home was simply to advise students to think carefully about their choice and discuss the matter with their parents." *Id.* The Office of Residential Life further added that the first email "was not an endorsement of any particular course of action." *Id.*

Despite Plaintiffs continuing to take courses online; having the option to live on campus; having access to take-out meals from the campus dining halls, the library, free WiFi, student services and most recreational offerings; and reaping other benefits from remaining enrolled at Liberty, Plaintiffs purport to seek a pro-rated refund of all allegedly "unused" fees for the remainder of the Spring 2020 semester. *Id.* ¶¶ 17, 30, 34. The Amended Complaint lists the cost of dining plans, housing, auto registration, parking decals, student health, coursework, and activity fees associated with Liberty's Student Center, the Rawlings School of Divinity, the School of Law, and the College of Osteopathic Medicine as "examples" of the types of fees that Plaintiffs seek to recoup. *Id.* ¶¶ 31-33. But the Amended Complaint fails to identify which specific fees Students A, B, C, and D actually paid and which associated services, if any, were not available to them. *See id.* ¶¶ 18-21.

### III. STANDARD OF REVIEW

Plaintiffs' claims fail to meet the *Twombly* and *Iqbal* standard. As the Court is aware, to survive Liberty's Motion to Dismiss, Plaintiffs' Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plaintiffs must provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id*. In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Against this standard, the Court is compelled to dismiss Plaintiffs' Amended Complaint.

### IV. ARGUMENT[2]

### 1. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.

It is axiomatic that to state a breach of contract claim, Plaintiffs must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v.*

---

[2] The Amended Complaint does not identify any jurisdiction, other than Virginia, whose laws could apply to Plaintiffs' state law claims. Because the parties presumably executed their contract(s) in Virginia and the alleged wrong(s) occurred in Virginia, Virginia law governs Counts I through IV. *See Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998) (Virginia applies the law of the place of the wrong to tort actions); *Black v. Powers*, 48 Va. App. 113, 128 (2006) (place of contract formation governs breach of contract claims).

*George*, 267 Va. 612, 619 (2004).  Applying these criteria, the Court should dismiss Count I of the Amended Complaint.

As the Supreme Court of Virginia has made clear, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract." *Allen v. Aetna Casualty & Surety Co.*, 222 Va. 361, 364 (Va. 1981). In the absence of such assent to reasonably certain terms, a court lacks any basis for determining whether a breach occurred and an adequate remedy for any such breach.  *See Kay v. Professional Realty Corp.*, 222 Va. 348, 351 (Va. 1981).

Here, Plaintiffs vaguely allege that they "entered into contracts with Liberty" under which Plaintiffs would pay fees and Liberty "would provide services and make available activities to students," Am. Compl. ¶ 71, but Plaintiffs neither attach nor identify the contract(s) purportedly encompassing these terms. Although the Amended Complaint identifies "examples" of fees that students paid for the 2019-2020 academic year (*e.g.*, dining plans, housing, auto registration, parking decals, student health fees, course fees, and various activity fees), the Amended Complaint fails to identify which fees Plaintiffs actually paid under their individual student contract(s) for the Spring 2020 semester, the amount of those fees, what they were supposed to receive in return for those fees, and what services they did not receive that they were supposed to receive. *Id.* ¶¶ 18-21, 31-33. For example, the Amended Complaint does not allege which residence hall, meal plan, course fee(s) and/or parking zone Plaintiffs selected when enrolling for the current academic semester. It does not allege how much Plaintiffs paid as fees for such services and programs. Nor does the Amended Complaint identify any contractual obligation to refund any fees charged for services that go "unused" by a student. Because Plaintiffs fail to allege which terms of the

contract(s) Liberty breached, the Court should dismiss Count I of the Amended Complaint as unduly vague.

Plaintiffs' conclusory allegation that "Liberty breached the contracts when it moved class online and stopped providing services and activities for which the fees were intended to pay," Am. Compl. ¶ 73, does not satisfy the federal pleading standards articulated by *Twombly* and *Iqbal*. *See Young v. CitiMortgage, Inc.*, 2013 WL 3336750, at *7 (W.D. Va. July 2, 2013) (dismissing breach of contract claim because plaintiff failed to identify "any contractual promise [the defendant] allegedly breached"); *see also O'Connor v. Sand Canyon Corp.*, 2015 WL 225423, at *5 (W.D. Va. Jan. 16, 2015) (Moon, J.) (dismissing breach of contract claim because plaintiff "did not identify any term in the Deed of Trust which [d]efendants failed to follow"); *Supchak v. Fuller Constr. Corp.*, 86 Va. Cir. 517 (Chesapeake Cty. 2013) (sustaining demurrer on breach of contract claim where plaintiff "failed to plead any facts indicating what obligations were breached by [defendants] under the contracts and how [defendants] allegedly breached those obligations"). "[A]bsent the breach of an identifiable promise by [Liberty]," Plaintiffs' allegation that "Liberty breached the contracts" by failing to provided unspecified services and activities constitutes "nothing more than a conclusory allegation, which falls fatally short of showing an entitlement to relief." *Young*, 2013 WL 3336750, at *7 (citing *Alston v. Massachusetts*, 661 F. Supp. 2d 117, 124 (D. Mass. 2009) ("simply assert[ing] that [the defendant] has breached a contract, without giving any facts about the terms or obligations created by this alleged contract, . . . fail[s] . . . 'plausibly' to state a claim a breach of contract[.]")); *Supchak*, 86 Va. Cir. at 517 (finding that plaintiff "failed to plead sufficient facts to show a breach of contract," where plaintiff failed to identify contractual obligation that was breached); Am. Compl. ¶ 73.

Plaintiffs have failed to allege the "reasonably certain" terms of the purported contract(s) they entered into with Liberty and, thus, any conduct by Liberty that could constitute a breach of such contract(s). *Allen*, 222 Va. at 364. With the absence of these crucial allegations, the Amended Complaint fails to provide Liberty with "fair notice of what [Plaintiffs' claims are] and the grounds upon which [they rest]," *Twombly*, 550 U.S. at 555 (citation omitted), and fails to provide this Court with the requisite bases to determine Plaintiffs' entitlement to the relief they seek, *see Kay*, 222 Va. at 351. Count I of Plaintiffs' Amended Complaint, accordingly, must be dismissed.

## 2.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT.

The Court should dismiss Count II of the Amended Complaint because Plaintiffs allege that express contract(s) cover the fees that Plaintiffs seek to recoup in their unjust enrichment claim. Plaintiffs also fail to identify which fees Liberty has unjustly retained, what activities and services Liberty allegedly failed to provide and which services Plaintiffs actually enjoyed and would have benefited from but for the alleged failure to provide.

To state a claim for unjust enrichment, Plaintiffs must allege that: (1) they conferred a benefit on Liberty, (2) Liberty knew of the benefit and should reasonably have expected to repay Plaintiffs, and (3) Liberty accepted or retained the benefit without paying for its value. *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008) (citations omitted). "It is well settled that under Virginia law 'there can be no recovery in quantum meruit where a valid express contract between the parties exists.'" *Raleigh Radiology, Inc. v. Eggleston & Eggleston, P.C.*, 2009 WL 3764092, at *3 (W.D. Va. Nov. 10, 2009) (quoting *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992)). Indeed, "[t]he Supreme Court of Virginia has made unmistakably clear that 'the existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment.'" *Advanced Training Grp. Worldwide,*

*Inc. v. Proactive Techs. Inc.*, 2020 WL 1904074, at \*9 (E.D. Va. Apr. 17, 2020) (quoting *CGI Fed. Inc. v. FCi Fed.*, Inc., 295 Va. 506, 520 (2018)).[3]

Plaintiffs allege, in support of Count I, that express contracts exist that allegedly cover the same fees that Plaintiffs seek to recover in their unjust enrichment claim; thus, Count II requires dismissal. *See CGI Federal Inc.*, 295 Va. at 520; *see also Raleigh Radiology, Inc.*, 2009 WL 3764092, at \*3 (granting motion to dismiss unjust enrichment claim because plaintiff admitted that the parties express, written agreement covered the fees that formed the basis of the plaintiff's unjust enrichment claim); *see also Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) (affirming dismissal of unjust enrichment claim because "there [was] an express contract between [the parties] which ha[d] not been set aside by the courts"). In *CGI Federal Inc.*, the Supreme Court of Virginia affirmed the trial court's dismissal of a contractor's unjust enrichment claim because the contractor "elected to sue for tort and contract damages and as a consequence, affirm[ed] the contract and consent[ed] to be bound by its provisions." 295 Va. at 520 (quotations and citations omitted). Because the parties' express contract remained in effect, the court held that the contractor could "not recover on a quasi-contractual claim that is otherwise precluded by a contract which [the plaintiff] ha[d] affirmed." *Id.* Plaintiffs have likewise affirmed the existence of their contract(s) with Liberty by remaining enrolled as students at the University and electing to sue for contract damages. Am. Compl. ¶¶ 18-21. Because Plaintiffs allege that express contract(s) with Liberty remain in effect and cover the same fees that form the basis of their unjust enrichment claim, Count II fails.

---

[3]    Although Plaintiffs may plead their unjust enrichment claim in the alternative pursuant to Federal Rule of Civil Procedure 8(d), Am. Compl. ¶ 76, Liberty does not dispute that various fees at issue in the Amended Complaint arise out of the contractual relationship between Liberty and each individual student. Accordingly, Count II must fail.

Lastly, Plaintiffs' conclusory allegations and mere legal conclusions in Count II suffer from the same pleading defects as their breach of contract claim. Plaintiffs do not identify which fees they paid, which fees Liberty allegedly retained, what "services and activities" Liberty allegedly failed to provide or which "services and activities" Plaintiffs would have made use of but for Liberty's alleged failure to provide. *Id.* ¶¶ 76-80. Such "naked assertion[s] devoid of further factual enhancement" do not suffice to state a claim for unjust enrichment. *Iqbal*, 556 U.S. at 678 (quotations and citations omitted). Accordingly, the Court should dismiss Count II.

3.     **PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION.**

Count III should be dismissed because: (a) Plaintiffs fail to allege a property interest that can support the basis of a conversion claim; and (b) Liberty received the fees that Plaintiffs seek to recover in good faith and for valuable consideration.

Virginia courts define conversion as "the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000) (citations omitted). To state a claim for conversion, the plaintiff must have "a property interest in and entitle[ment] to immediate possession of the item alleged to have been wrongfully converted." *Id.* (citations omitted). Generally, "conversion applies only to tangible property." *United Leasing Corp. v. Thrift Insurance Corp.*, 247 Va. 299, 305 (1994). Virginia courts have recognized that a claim for conversion may exist where an intangible property right merges with a document, such as a valid stock certificate, promissory note, or bond. *Id.* at 305-06. But "there can be no conversion of an undocumented intangible asset" under Virginia law. *Orix Credit All., Inc. v. Young Express, Inc.*, 43 F. App'x 650, 654 n.3 (4th Cir. 2002).

Plaintiffs' allegations that Liberty wrongfully converted their right to receive in-person instruction and participate in activities on campus, *see* Am. Compl. ¶¶ 83-84, constitute *precisely* the type of undocumented intangible assets that *cannot* support a conversion claim. *See, e.g.*, *Darton Envtl., Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1033 (W.D. Va. 2018) (Moon, J.) (dismissing claim for conversion of trade secrets and technology because plaintiff failed to allege that it ever reduced its technology or trade secrets to writing in a tangible document); *Colgate v. Disthene Grp., Inc.*, 86 Va. Cir. 218 (Buckingham 2013) (sustaining demurrer in part because the court found "no support for the [p]laintiffs' position that conversion can extend to personal services").

Alternatively, Plaintiffs allege that Liberty "deprived [them] of the fees" that they allegedly paid for certain "services and activities." Am. Compl. ¶ 85. Although Virginia courts have recognized that money can, in certain instances, support the basis of a conversion claim, the money must take the form of an identifiable fund, "such as a bag of money or identifiable settlement proceeds." *Jones v. Bank of Am. Corp.*, 2010 WL 6605789, at *5 (E.D. Va. Aug. 24, 2010) (citing *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 344 (2003) (settlement proceeds can form basis of conversion claim); *Golden v. Chaplin*, 79 Va. Cir. 155 (Fairfax 2009) (noting that money could not form basis of conversion of claim at common law "unless it was in a bag or chest")). Here, Plaintiffs fail to allege an identifiable fund of money. Rather, the Amended Complaint merely lists examples of "[a]pproximate fees" that Plaintiffs may or may not have paid during the 2019-2020 academic year. Am. Compl. ¶¶ 31-34. Plaintiffs' vague allegations that they paid "fees" and the "cost of room and board" for the Spring 2020 semester cannot form the basis of a conversion claim. Am. Compl. ¶¶ 18-21.

Moreover, Liberty received the fees allegedly paid by Plaintiffs in good faith and for valuable consideration; thus, Liberty did not wrongfully exercise control over the fees. "As a rule, a wronged party can recover money converted if the possessor did not receive it in good faith or for valuable consideration, even if the money has changed forms." *Fed. Ins. Co. v. Smith*, 63 F. App'x 630, 632-33 (4th Cir. 2003) (citing *Bader v. Central Fid. Bank*, 245 Va. 286, 290 (permitting plaintiff to bring conversion claim against bank that paid on forged checks (additional citations omitted))). Liberty received the fees when Plaintiffs allegedly entered the student contract(s) with the University covering the Spring 2020 semester. Am. Compl. ¶ 71. This occurred well before Liberty moved classes online in late March 2020 and restricted campus activities to comply with the Executive Orders relating to COVID-19. *Id.* ¶¶ 42-43. Plaintiffs also received valuable consideration for the remainder of the Spring 2020 semester fees, including online courses for credit, the option to live on campus, take-out meals from the campus dining halls, make use of all the other services and facilities that remained operational, and other benefits stemming from remaining enrolled as students at Liberty. *Id.* ¶¶ 6, 86.

Because Plaintiffs fail to allege a property interest that can form the basis of a conversion claim, and because Liberty received the fees allegedly paid by Plaintiffs in good faith and for valuable consideration, Plaintiffs cannot state a claim for conversion. Accordingly, the Court should dismiss Count III.

### 4.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE VCPA.

The VCPA prohibits suppliers of goods and services from committing certain fraudulent acts or practices "in connection with a consumer transaction." Va. Code § 59.1-200. The economic loss rule precludes Plaintiffs' VCPA claim because the duty allegedly breached by Liberty exists solely by virtue of the contract(s) between the parties. The Court should also dismiss Count IV

because Plaintiffs fail to identify any fraudulent misrepresentation of fact, fail to allege reliance on the misrepresentation, and fail to adequately allege damages as required to state a claim under the VCPA.

### a.   The economic loss rule bars Plaintiffs' VCPA claim.

The economic loss rule precludes Plaintiffs' VCPA claim because Plaintiffs fail to allege a duty that exists independently of the parties' contract(s). Under the economic loss rule, "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 360 (2010) (quoting *Filak*, 267 Va. at 618). To determine whether a duty sounds in contract or tort, courts look to "the source of the duty violated." *Id.* (citations omitted).

In *Abi-Najm*, the Supreme Court of Virginia found that the existence of a contract between condominium buyers and the seller did not preclude a VCPA claim because the seller's duty "not to misrepresent the quality, grade, or style of goods" in connection with a consumer transaction constitutes "a statutory duty that exists independent of the [c]ontracts entered into between the parties[.]" *Id.* at 362. *Abi-Najm* involved a dispute over the flooring installed in the condominiums. *Id.* at 354-56. The buyers argued that the flooring installed substantially differed from the flooring promised, that the sellers willfully concealed the actual flooring material the contractors would install, and that the sellers knew or should have known that the buyers would have reconsidered or renegotiated the contracts had the sellers disclosed the actual flooring material used. *Id.* Because the buyers alleged that the sellers breached a duty independent of the parties' contracts—the statutory duty not to misrepresent the style of goods in connection with a consumer transaction— the Supreme Court of Virginia held that that the trial court erred by finding that the parties' contracts precluded the buyers' VCPA claim. *Id.* at 362.

In contrast to the misrepresentations made to the buyers in *Abi-Najm*, which occurred *before* the parties entered into a consumer transaction, Liberty made the alleged misrepresentation that it remained "open" *after* Plaintiffs paid Spring 2020 semester fees and entered into the contract(s) with the University. *Id.* at 363; Am. Compl. ¶ 95. Unlike the *Abi-Najm* buyers, Plaintiffs do not allege, because they *cannot*, that Liberty's statement about remaining open induced them to pay fees for the Spring 2020 semester or affected any other aspect of their purported consumer transactions with the University. Mere dissatisfaction with a party's performance under a valid contract does *not* trigger application of the VCPA.  Because the duty allegedly breached by Liberty to provide certain services and activities exists solely by virtue of the parties' contract(s), Am. Compl. ¶ 71, the economic loss rule precludes Plaintiffs' VCPA claim. *Cf. Dunn Const. Co. v. Cloney*, 278 Va. 260, 268 (2009) (refusing to turn "every breach of contract into an actionable claim for fraud simply because of misrepresentations of the [defendant] entwined with a breach of the contract" (quotations and citations omitted)).

> **b.  Plaintiffs fail to allege that Liberty made a fraudulent misrepresentation of fact with intent to mislead, reliance on the alleged misrepresentation, and damages.**

Even if Plaintiffs had identified a duty outside the parties' contract(s), and they did *not*, the Amended Complaint would still fail to state a claim under the VCPA. To state a claim, Plaintiffs must allege: (1) a fraudulent misrepresentation of fact, (2) by a supplier, (3) in a consumer transaction. *Hamilton v. Boddie-Noell Enterprises, Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015) (citations omitted). To establish a fraudulent misrepresentation of fact, Plaintiffs must also allege the common law fraud elements of reliance and damages. *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 498 (2014). Because Plaintiffs seek treble damages for willful violations of the VCPA, Plaintiffs must further allege that Liberty made the misrepresentations knowingly or with

the intent to deceive. *Id.* (citing Va. Code § 59.1-204). Finally, VCPA claims must satisfy the heightened pleading standards of Rule 9(b), which requires claimants to state the circumstances surrounding the fraud with particularity. Fed. R. Civ. P 9(b); *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013).

Liberty's statement that it remained "open" does not constitute a misrepresentation of fact under the VCPA because it is a true statement. Am. Compl. ¶ 95. On March 16, 2020, the University issued a press release titled "Liberty remains open; most residential classes go online." *Id.* ¶ 7 n.3, ¶ 43 n.10. In the press release, Liberty explained how the University would: (i) move courses online; (ii) keep campus residence and dining halls staffed so that students may remain on campus if they choose; and (iii) restrict certain campus events and activities to comply with Governor Northam's Orders. *See id.* ¶ 7 n.3 (citing Liberty remains open; most residential classes go online; *Liberty News* (Mar. 16, 2020)). Contrary to Plaintiffs' assertion, nothing in Liberty's press release "misrepresent[ed] the characteristics and benefits" of the services that Liberty offered. Am. Compl. ¶ 96(a) (citing Va. Code § 59.1-200(A)(5)). Nor did Liberty use "deception, false pretense, and misrepresentation" in connection with the sale of its services or advertise its services "with the intent not to sell them as advertised." *Id.* ¶ 96(b)-(c) (citing §§ 59.1-200(A)(8), (14)).[4]

Plaintiffs further assert that "Liberty's decision to tell its students that they could remain on campus to continue to use their housing, meal plans, parking, and other benefits of the services and activities for which their fees paid" constitutes an "illusory and empty" promise "because there

---

[4]     Plaintiff also argues that Liberty's "pretextual ruse of the campus being 'open'" constitutes a misleading statement of fact concerning the reasons for or existence of a price reduction (referring to the $1,000.00 credit that Liberty offered students who chose not to return to campus for the remainder of the Spring 2020 semester). *Id.* ¶¶ 48, 95, 96(d) (citing Va. Code § 59.1-200(A)(9)). As explained above, Liberty's statement that it remained open was true, and therefore does not constitute a misleading statement of fact; thus, this argument also fails.

were no more on-campus classes." Am. Compl. ¶ 44. By Plaintiffs' logic, all businesses that transitioned to teleworking and virtual operations to comply with Governor Northam's Executive Orders effectively closed, which is simply untrue. Plaintiffs' choice not to return to campus does not render Liberty's statement about remaining open misleading or negate the fact that the University remained open and operational with many students taking advantage of all that was available.

Even if Liberty's statement that it remained "open" constituted a misrepresentation of fact—which it does *not*—Plaintiffs' VCPA claim would still fail because Plaintiffs do not allege the element of reliance. *See BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) (dismissing VCPA claim because plaintiffs failed to plead reliance on the alleged misrepresentations); *Brown v. Transurban USA, Inc*., 144 F. Supp. 3d 809, 846 (E.D. Va. 2015) (same). Plaintiffs entered their general student contract(s) with the University well before Liberty made the alleged misrepresentation about remaining "open" for the duration of the Spring 2020 semester. Indeed, Plaintiffs do not allege—nor could they allege—that they relied on statements made *after* they allegedly paid fees for the Spring 2020 semester.

Plaintiffs also fail to adequately plead damages under the VCPA because the Amended Complaint does not identify which fees Plaintiffs allegedly paid for the Spring 2020 semester. Plaintiffs' vague allegation that "they have suffered and continue to suffer financial losses," Am. Compl. ¶ 98, cannot nudge their VCPA claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Because Plaintiffs fail to allege that they relied on Liberty's alleged misrepresentation to their detriment, their VCPA claim requires dismissal.

Finally, Plaintiffs' allegation that "Liberty's conduct . . . was willful and done with the intent to mislead and profit," Am. Compl. ¶ 97, constitutes a bare legal conclusion that does not

16

enjoy the assumption of truth. *Iqbal*, 556 U.S. at 678. Thus, Plaintiffs have failed to allege that they are entitled to treble damages under the VCPA. *See* Va. Code § 59.1-204.

Because Plaintiffs fail to allege a fraudulent misrepresentation of fact, reliance on the alleged misrepresentation, and damages, the VCPA claim fails. Accordingly, the Court should dismiss Count IV.

## V.     CONCLUSION

Based on the foregoing, Liberty respectfully requests that the Court dismiss the entirety of Plaintiffs' Amended Complaint with prejudice and award Liberty its costs and such further relief that the Court deems proper.

Respectfully submitted,

**LIBERTY UNIVERSITY, INC.,**
**d/b/a LIBERTY UNIVERSITY**

By:   /s/Turner A. Broughton
Turner A. Broughton, Esquire (VSB #42627)
Harold E. Johnson, Esquire (VSB #65591)
Amanda H. Bird, Esquire (VSB #92110)
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, VA  23218
Telephone: (804) 420-6000
Facsimile: (804) 420-6507
tbroughton@williamsmullen.com
hjohnson@williamsmullen.com

Benjamin G. Chew, Esquire (VSB # 29113)
Michael Bowe (*pro hac vice* pending)
Michael Winograd (*pro hac vice* pending)
Jessica N. Meyers (*pro hac vice* pending)
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

bchew@brownrudnick.com
mbowe@brownrudnick.com
mwinograd@brownrudnick.com
jmeyers@brownrudnick.com
*Counsel for Defendant Liberty University, Inc.*

## CERTIFICATE OF SERVICE

I certify that on June 15, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> E. Kyle McNew
> J. Gregory Webb
> Lisa S. Brook
> **MICHIEHAMLETT**
> 310 4th Street, NE
> Charlottesville, Virginia 22902
> Tel.:  434-951-7231
> kmcnew@michiehamlett.com
> gwebb@michiehamlett.com
> lbrook@michiehamlett.com
>
> Adam J. Levitt Amy E.
> Keller Laura E. Reasons
> DICELLO LEVITT GUTZLER LLC
> Ten  North  Dearborn  Street,  Sixth  Floor
> Chicago, Illinois 60602
> Tel.:  312-214-7900
> alevitt@dicellolevitt.com
> akeller@dicellolevitt.com
> lreasons@dicellolevitt.com
>
> Matthew S. Miller
> MATTHEW S. MILLER LLC
> 77 West Wacker Drive, Suite 4500
> Chicago, Illinois 60601
> Tel.:  312-741-1085
> mmiller@msmillerlaw.com

> By:  /s/Turner A. Broughton
> Turner A. Broughton, Esquire (VSB #42627)
> Harold E. Johnson, Esquire (VSB #65591)
> Amanda H. Bird, Esquire (VSB #92110)
> Williams Mullen
> 200 South 10th Street, Suite 1600
> Richmond, VA  23218
> Telephone: (804) 420-6000
> Facsimile: (804) 420-6507
> tbroughton@williamsmullen.com
> hjohnson@williamsmullen.com
> abird@williamsmullen.com

19