UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| **STUDENT A**, **STUDENT B**, **STUDENT C**, **and STUDENT D**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**LIBERTY UNIVERSITY, INC., d/b/a LIBERTY UNIVERSITY**,<br><br>Defendant. | Case No. 6:20-cv-00023-NKM<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF
<u>CLASS REPRESENTATIVES AND CLASS COUNSEL</u>**

Plaintiffs Student A, Student B, Student C, and Student D (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class," as defined herein), by their undersigned counsel and pursuant to Rule 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4) of the Federal Rules of Civil Procedure, submit this Memorandum of Law in Support of their Motion for Class Certification and Appointment of Class Representatives and Class Counsel.

**INTRODUCTION**

Plaintiffs move for certification of the proposed Class because the issues in this case arise from the common experience of more than 14,000 students of Defendant Liberty University ("Liberty"). Every member of the proposed Class is or was enrolled in on-campus classes as a student at Liberty University, which required the payment of mandatory fees for access to various services and facilities to be fully available throughout the Spring 2020 semester. In March 2020—about halfway through the semester—Liberty either materially altered the nature of those services

and facilities, or eliminated them altogether, due to the COVID-19 pandemic. Every member of the proposed Class was thus deprived of the benefit of their bargain because they were denied access to the services and facilities for the semester. Liberty, however, has refused to reimburse each of the proposed Class members' pro-rated, unused portion of the fees paid, proportionate to the amount of time that remained in the Spring 2020 semester when on-campus classes moved online and campus services and activities were shut down. That is what this case is about. Plaintiffs, on behalf of themselves and all other Class members, are seeking to recover the same *pro-rata* percentage—approximately 40%—of the total fees paid to Liberty for the Spring 2020 semester.

At this stage of the litigation, the Court need "not [] adjudicate the case; rather, [the Court must] select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (internal quotations and brackets omitted). Proceeding as a class action will undoubtedly provide the most efficient and fair method of adjudication, and there is no reason to delay that decision. Indeed, this case seems tailor-made for class certification and class adjudication. It would be inefficient and a waste of judicial resources to require students to file lawsuits, one by one, seeking the same relief, based on the same facts. The answers to the common questions regarding Liberty's liability and the method for calculating damages will be the same for all Class members. *See Wal-Mart Stores, Inc. v. Dukes, et al.*, 564 U.S. 338, 350 (2011) (recognizing that a proceeding's ability to "generate common answers" is "what matters"). In addition, since Liberty has refused to—and should be ordered to—take action on grounds that apply to every member of the proposed Class, declaratory and injunctive relief also are appropriate for the class as a whole. *Dukes*, 564 at 360 ("Rule 23(b)(2) allows class treatment when . . . final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole."). Accordingly, Plaintiffs' motion for class certification and appointment of Class Representatives and Class Counsel should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

All of the proposed Class members, including Plaintiffs, paid fees to Liberty for the 2020 Spring semester, in addition to the cost of tuition. (FAC, Dkt. No. 17 ¶¶ 18-21.) Students were charged and paid fees for room, board, and access to on-campus services and facilities such as the student health center, activity and student center, dining hall, parking, and vehicle registration. (*Id.* at ¶¶ 30-32.) Three of the four Plaintiffs also paid for room and board for the entire 2020 Spring semester. (*Id.* at ¶¶ 19-21.) The 2020 Spring semester began on January 13, 2020, and was scheduled to conclude on May 6, 2020. (*Id.* at ¶¶ 28-29.)

On March 12, 2020, due to the COVID-19 pandemic, the Governor of Virginia declared a State of Emergency, issuing a "stay at home" order for all Virginia residents. (*Id.* at ¶ 42.) Meanwhile, Liberty sent mixed messages to its students by encouraging them to stay home and telling them that its campus remained "open," even though classes would be online and student activities were cancelled. (*Id.* at ¶¶ 6, 44-45.)

Predictably, most students did not to return to campus. This made sense since there were no on-campus classes, services they paid for were no longer available, and residence halls at Liberty are not designed to safely house students during a pandemic. (*Id.* at ¶¶ 6-10, 46.) Despite the campus shutdown, Liberty never offered a full refund. Instead, Liberty offered what it called a "customer service measure" by offering $1,000 credit for Fall 2020 charges to students who left campus housing by March 28, 2020, and did not return to campus housing for the rest of the semester. Students who did not live in campus housing received nothing. Students who chose not to return to Liberty received nothing. No one received a cash refund. (*Id.* at ¶¶ 50-51, 53-54.)

By pocketing the students' money without providing the services, Liberty received a windfall of millions of dollars at the expense of Plaintiffs and the other proposed Class members. (*Id.* at ¶¶ 13-14, 51, 53-54.) Recognizing the inequities, and prior to the filing of this lawsuit, proposed Class members—already suffering from the financial stress caused by the pandemic—demanded that Liberty return the unused portion of their fees. (*Id.* at ¶¶ 53-58.) Liberty rejected each such request. (*Id.* at ¶ 53.)[1] Plaintiffs, individually and on behalf of the other proposed Class members, seek the entry of an Order requiring Liberty's disgorgement of the pro-rated, unused portion of fees, proportionate to the amount of time that remained in the Spring 2020 semester—approximately 40%—when Liberty moved classes on-line and stopped providing on-campus services and activities. (*Id.* at ¶ 59.)

## LEGAL STANDARD

This Court has broad discretion to grant class certification. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). When assessing whether Plaintiffs have met the Rule 23 requirements, the court must conduct a "rigorous analysis." *Dukes*, 564 U.S. at 351 n. 6. Moreover, although plaintiffs are confident that they will prevail on the merits, now is not the time for the court to dive into merits inquiries. *Amgen*, 568 U.S. at 466. Rather, the court may consider merits questions "only to the extent . . . that they are relevant to determining whether" plaintiffs

---

[1] Uniform, class-wide discovery will show that students and their families contacted Liberty for refunds directly, and that Liberty responded with scripted messages that offered prayers, but no refunds. As an example, attached is a redacted message (redacted to protect identity) received by one family. See **Exhibit 1**. The message concludes: "I pray that you and your family will be blessed with good health and that your life will be richly rewarded by God's faithfulness and provision. Regarding your appeal for Liberty to reconsider the amount of credit being given and to offer the credit to students who will not be living on-campus, your opinion is appreciated; however, the University is not currently considering appeals for students who will not be returning to the University in Fall 2020 or for the amount of the credit that is being provided to eligible students for Spring 2020 costs."

have satisfied the Rule 23 prerequisites." *Id.* at 460. When the plaintiffs' claims raise common questions of law and fact, as in this case, common adjudication is superior to individual treatment.

## ARGUMENT

Federal Rule Civil Procedure 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Even at this early procedural posture of this litigation, Plaintiffs are able to demonstrate that they meet the enumerated prerequisites of Rule 23(a) and at least one prong of Rule 23(b) or 23(c)(4). *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). Rule 23(b)(2) requires that the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting only individual class members, and that a class action is "superior to other available methods of adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). And Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Plaintiffs meet all the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(2) and (b)(3). Alternatively, Plaintiffs meet the requirements of Rule 23(c)(4).

### I. The Proposed Class is Definite and Ascertainable.

Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable." *EQT*, 764 F.3d at 358. Plaintiffs seek to certify a Rule 23(b)(2), (b)(3), and/or (c)(4) class composed of:

> All students who paid fees (including but not limited to campus fees, room, board, parking, and other fees as broadly defined herein) in connection with enrollment in live, on-campus classes at Liberty University for the Spring 2020 semester.

(FAC, Dkt. No. 17 ¶ 60.) The proposed Class consists of at least 14,000 people, is objectively defined, and its members can be readily ascertained from Liberty's enrollment and payment records. *EQT*, 764 F.3d at 358 (An ascertainable class exists if "a court can readily identify the class members in reference to objective criteria."). The proposed Class is "readily identifiable."

## II. The Proposed Class Satisfies the Requirements of Rule 23(a).

Rule 23(a) provides the basic prerequisites that must be satisfied for class certification. Under Rule 23(a), a class action may be maintained only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### A. The Proposed Class is Sufficiently Numerous.

Rule 23(a)(1) mandates that a class must be "so numerous that joinder is impracticable." Fed. R. Civ. P. 23(a)(1). Courts have held that the numerosity requirement is satisfied when a class exceeds 40 members. *See Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *7 (E.D. Va. March 1, 2017); *Kennedy v. Va. Polytechnic Inst. & State Univ.*, No. 7-08-cv-00579, 2010 WL 3743642, at *3 (W.D. Va. Sept. 23, 2010). The proposed Class here totals at least 14,000 members—the number of students enrolled in live, in-person classes at Liberty for the Spring 2020 semester. (FAC, Dkt. No. 17 ¶ 63.) Even if every Liberty student is not a member of the proposed Class, the proposed Class still easily satisfies the numerosity requirement. Rule 23(a)(1)'s numerosity requirement is met.

### B. There are Questions of Law and Fact Common to the Proposed Class.

Rule 23(a)(2) requires plaintiffs seeking class certification to demonstrate that members of the proposed class share "common questions of law and fact." Fed. R. Civ. P. 23(a)(2). This

{00660629-3}                                6

requirement is construed permissively and is less stringent than the predominance requirement of Rule 23(b)(3). *Brown v. Cameron-Brown Co.*, 93 F.R.D. 32, 37 (E.D. Va. 1981). "[E]ven a single question" will suffice. *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotations and citations omitted). Commonality is satisfied where the claims of all class members "depend upon a common contention . . . [such] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see also Amgen*, 568 U.S. at 470. That is the case here, where the answers to common questions will drive the resolution of each of Plaintiffs' and the other Class members' claims.

This case centers on Liberty's misconduct, which was uniformly experienced by the entirety of the proposed Class, raising common issues of fact and law. Liberty's acts and omissions were applicable to and affected every proposed Class member who was enrolled for on-campus learning at Liberty for the Spring 2020 semester. Factual questions that can be resolved through common information likely to be uncovered through discovery include, among others:

- The facts and circumstances surrounding Liberty's response to the COVID-19 pandemic;

- The existence and terms of the contracts between Liberty and its students;

- The nature and amount of fees paid by Liberty's students for Spring 2020;

- The nature and extent of services provided by Liberty in Spring 2020 in exchange for the fees;

- Whether Liberty misrepresented that its campus remained "open" as a pretext to retain its students' fees; and

- Whether Liberty wrongfully refused to refund its students' fees after they demanded reimbursement.

The pertinent questions of law in this case are also common, and point to central issues of liability and damages. *See Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 447 (E.D. Va. 2004). Each of the questions below can be resolved on a class-wide basis:

- Whether Liberty breached its uniform contracts with its students by retaining students' fees without providing the services and activities which the fees were intended to cover;

- Whether Liberty was unjustly enriched by retaining fees students' fees without providing the services and activities that the fees were intended to cover;

- Whether Liberty committed conversion by retaining students' fees without providing the services and activities that the fees were intended to cover;

- Whether Liberty violated the Virginia Consumer Protection Act by using deception, false pretense, and misrepresentation to retain students' fees without providing the services and activities that the fees were intended to cover; and

- Whether Liberty is required to disgorge the pro-rated, unused portion of fees, proportionate to the amount of time that remained in the Spring 2020 semester when on-campus classes moved online and Liberty ceased providing the on-campus services and activities that students paid for.

(FAC, Dkt. No. 17 ¶ 64.)

The answers to these questions will be determinative of the outcome of this litigation for all proposed Class members. Thus, common issues in this case will be sufficiently specific and relevant to the entire Class to ensure a vigorous and full presentation of all claims for relief. *Soutter v. Equifax Information Servs., LLC*, 307 F.R.D. 183, 199-200 (E.D. Va. April 15, 2015). Plaintiffs, therefore, satisfy Rule 23(a)(2)'s commonality requirement.

**C.      Plaintiffs' Claims are Typical of the Other Class Members' Claims.**

Rule 23(a)(3) requires that the claims of the named Plaintiffs be typical of the claims of the other class members. A plaintiff's claim may factually differ and still be "typical" of class members' claims, if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."

*Siquic v. Star Forestry, LLC*, No. 3:13CV00043, 2015 WL 5818263, at *5 (W.D. Va. Oct. 5, 2015). The claims need not be "perfectly identical or perfectly aligned." *Id.* (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006)). The test for typicality is "whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims and defenses." *Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 533 (D. Md. 2011). The proposed class representatives easily meet this requirement.

All members of the proposed Class—including each of the proposed Class Representatives—paid fees to Liberty for the Spring 2020 semester and suffered the same harm. Liberty encouraged them to stay home, cancelled or materially altered the services and activities provided, and wrongfully retained the unused portion of the fees intended to cover those activities and services. Each of the proposed Class members was thus denied the full benefit of their bargain, and each Class member asserts the same legal claims arising out of Liberty's uniform misconduct. The fact that Plaintiff Student A and other members of the proposed Class did not pay for room and board, or the fact that some proposed Class members did not pay for services such as parking, does not render claims atypical. *See Neese v. Johanns*, No. CIV A. 1:05-CV-00071, 2006 WL 1169800, at *7 (W.D. Va. May 2, 2006) ("Any differences in the amount of damages suffered by the members of the class do not 'make the plaintiffs' legal claims atypical [ ] of the proposed class, as the slight factual differences do not alter the nature of the claims."). Determining the fees paid and then calculating the prorated, unused portion of fees applicable to each member of the proposed Class is a "mechanical task" that is "capable of mathematical or formula calculation" and is entirely manageable. *Pitt*, 221 F.R.D. at 447. Calculating damages in this case will be as simple as multiplying (a) the percentage of days remaining in the Spring 2020 semester when Liberty closed its campus times (b) the fees paid by each Class member. Thus, the proposed class

representatives' claims are typical of the other Class members' claims, thereby satisfying Rule 23(a)(3)'s typicality requirement.

### D. Plaintiffs and Their Counsel will Adequately Represent the Proposed Class.

Rule 23(a)(4) requires that the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "the named plaintiff does not have interests antagonistic to those of the class, and . . . plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Branch v. Gov't Employees Ins. Co.*, 323 F.R.D. 539, 549 (E.D. Va. 2018) (internal quotations and brackets omitted). The primary purpose of this element is to "uncover conflicts of interest between named parties and the class they seek to represent." *Id.* Additionally, in evaluating the adequacy of plaintiffs' counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The Class Representatives have no conflicts of interest with absent Class members, and every interest and intention of prosecuting this case vigorously. To date, each Class Representative has actively participated in this litigation by providing documents to counsel, and by providing privileged interviews with counsel about their experiences. They have each chosen to serve as named Plaintiffs and proposed Class Representatives to ensure that all members of the proposed Class receive appropriate relief. Moreover, the Class Representatives' claims rise and fall on the same questions of law relevant to the other Class members. Plaintiffs seek damages individually and on behalf of the other Class members that, although varying in amount, will be calculated in the same manner, arise from the same cause, raise the same liability questions, and will be resolved

by the same answers regarding Liberty's alleged misconduct. There are no conflicts of interest that exist between or among the proposed Class Representatives and the other members of the proposed Class.

Additionally, the Class Representatives are represented by highly qualified counsel with extensive experience conducting class and complex litigation, particularly in breach of contract and consumer protection cases. Counsel have committed significant resources to developing the claims in this case, are committed to continuing to prosecute this action vigorously, and should be appointed to serve as Class Counsel under Rule 23(g). Fed. R. Civ. P. 23(g); *see also* **Exhibit 2**. Significantly, two of the proposed Class Counsel here, Messrs. Levitt and Miller, were recently appointed as Interim Class Counsel in *Miller v. Board of Trustees of the California State University*, Nos. 2:20-cv-03833-SWV (SKx) (consolidated) (C.D. Cal., Sept. 16, 2020) (*see* **Exhibit 3**) - a case that is materially similar to this one, in that it alleges that California State University should have refunded pro-rated amounts of certain fees when it effectively closed its campuses because of COVID-19.

### III.    The Proposed Class Satisfies Rule 23(b)(3).

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In reviewing this issue, courts consider (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *Id.*

### A. Common Issues Predominate.

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Plaintiffs need not prove that each element of their claim is susceptible to class-wide proof, but only that common questions "predominate over any questions affecting only individual [class] members." *Amgen*, 568 U.S. at 469 (internal quotations and citations omitted). If one or more "common, aggregation-enabling, issues in a case are more prevalent or important than the non-common, aggregation-defeating, individual issues," the proposed Class satisfies this prong of Rule 23(b). *Id.* This remains true even if every proposed Class member's damages are not exactly the same. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003) ("In actions for money damages under Rule 23(b)(3), courts *usually* require individual proof of the amount of damages each member incurred.") (internal quotations and citations omitted). So long as "common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied." *Id.* (quoting 5 Moore's Federal Practice § 2346[2][a] (1997)).

Courts routinely certify classes where, as here, litigation centers on a single course of conduct by the defendant that is determinative of liability and is common to all class members. *See, e.g.*, *Yerby v. City of Richmond, Virginia*, No. 3:19-cv-393, 2020 WL 602268, at *5 (E.D. Va. Feb. 7, 2020) (granting certification where class members were allegedly subject to a uniform policy or practice that violated FLSA); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, (S.D. Fla. 2015) (referring to case where liability was based upon defendant's standardized practice that applied to all class members as a "quintessential class action"); *Knight v. Lavine*,

1:12-CV-611, 2013 WL 427880, at *2 (W.D. Va. Feb., 2013) (where the primary question presented in ERISA breach-of-fiduciary-duty action was common to all 401(k) plan participant class members, individual issues concerning quantification of their respective losses did not preclude class certification); *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003) (cell phone customers improperly charged for incoming calls in violation of common contract; common issues predominated because of common questions regarding liability); *Health Plan of Upper Ohio Valley, Inc. v. DeGarmo*, No. 593CV7, 1996 WL 780508, at * (N.D. W. Va. Oct. 28, 1996) (certifying class because claims of all class members arose out of standard practices). Class certification is thus appropriate here, because the determination of Liberty's liability will be based upon facts and circumstances common to the proposed Class. *See Fisher*, 217 F.R.D. at 227 ("[T]he fact that damages will differ among class members does not defeat the finding of predominance if liability is common to the class.").

Moreover, although the amount of damages may differ slightly among Class members (e.g., those who paid for on-campus housing versus those who lived off campus), damages are easily identifiable and capable of calculation using a single, common formula. *See Gunnells*, 348 F.3d 417 ("Rule 23 contains no suggestion that the necessity for individual damage determinations destroy commonality, typicality, or predominance, or otherwise forecloses class certification."); *see also Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (affirming class certification where damages differed for class members but could be calculated for all class members using a single formula); *Pitt*, 221 F.R.D. at 447 (certification is appropriate where calculating damages is a "mechanical task" that is "capable of mathematical or formula calculation" and is entirely manageable). Damages in this case can be determined by multiplying the total fees paid for each Class member times the percent of time remaining in the Spring 2020

semester when campus was shutdown (about 40%). Under this approach, damages are "susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *See Comcast v. Behrend*, 569 U.S. 27, 35 (2013). Rule 23(b)(3)'s predominance requirement is satisfied in this case.

### B. A Class Action is the Superior Procedure for Managing this Case.

Plaintiffs and the other members of the proposed Class experienced virtually identical circumstances as a result of Liberty's misconduct. At its core, this is a case of common factual questions, the answers to which will be driven by discovery. Relitigating these issues repeatedly contravenes the purpose of the Federal Rules because it will not "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated. . . ." *Gunnells*, 348 F.3d at 424. Further, a class action will not "sacrific[e] procedural fairness or bring[] about other undesirable results." *Id.* (quoting *Amchem*, 521 U.S. at 615).

This case involves more than 14,000 proposed Class members. Without a representative, aggregate action, thousands of students likely will be unable to seek relief, because the costs of litigation are far greater than the relief potentially available to them. *See Lee v. JNL Construction Servs., LLC*, No. RDB-17-2765, 2019 WL3869412, at *5 (D. Md. Aug. 16, 2019) ("Rule 23(b)(3) class actions are particularly well-suited for cases in which small individual recoveries would not provide plaintiffs with enough incentive to prosecute."). Leaving every student to litigate on their own would contravene the interests of speedy and fair adjudication of the common questions presented here. *See, e.g.*, Fed. R. Civ. P. 1. A class action would allow this Court to resolve all the common questions of law and fact in one action and, therefore, would avoid redundancy and the risk of inconsistent results. It is also the most efficient, practical, and fair method of adjudication. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1440 (2010) (Rule

23 is "designed to further procedural fairness and efficiency."). Accordingly, a class action is the superior procedure for managing this case. Rule 23(b)(3)'s superiority requirement is satisfied.

### IV. The Proposed Class Also Satisfies Rule 23(b)(2).

A declaratory and injunctive relief class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. 23(b)(2); *see also Dukes*, 131 S. Ct. at 2557 (holding that certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgement would provide relief to each member of the class"). As the Supreme Court has explained, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all the class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotations omitted).

Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class. *Dukes*, 131 S. Ct. at 2558 (stating that in Rule 23(b)(2) classes "[p]redominance and superiority are self-evident"). Additionally, questions of manageability and judicial economy are irrelevant to 23(b)(2) class actions. *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 758 (4th Cir. 1998), *overturned on other grounds* (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir. 1993)); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). Rather, it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. *See* 2 Newberg on Class Actions § 4:26 (5th ed. 2020) ("Rule 23(b)(2) authorizes certification in situations affecting the class as a whole, when 23(b)(2) circumstances are present, unitary adjudication is not only preferable, but it is also essential.").

In this case, Plaintiffs and the other Class members have suffered harm based upon Liberty's uniform policies and conduct. By refusing to reimburse the unused, pro-rated portion of fees it collected from its students during the Spring 2020 semester, Liberty engaged in a uniform, wrongful practice that is generally applicable to the Class as a whole. To alleviate the harm caused by Liberty's generally applicable policy and practice, Plaintiffs, individually and on behalf of the other Class members, seek declaratory and injunctive relief, declaring that Liberty has wrongfully retained the monies that they and the other Class members paid in the form of fees, and enjoining Liberty from retaining the prorated, unused portion of those fees. This type of "indivisible injunction benefitting all [class] members at once" conforms to Rule 23(b)(2)'s requirement that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See Dukes*, 131 S. Ct. at 2557-58 (stating that Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant"). Rule 23(b)(2) is also satisfied in this case.

### V. Alternatively, Class Certification Under Rule 23(c)(4) is Appropriate.

Alternatively, the Court can adjudicate common liability issues under Rule 23(c)(4). Most courts, including the Fourth Circuit, have embraced the use of Rule 23(c)(4) issue classes to secure the just, speedy, and inexpensive adjudication of cases, even where predominance is not satisfied for the cause of action as a whole. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 438-445 (4th Cir. 2003) (finding cases from the "First, Second, Third, Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits, [have] all . . . rejected the [ ] contention that class can be certified only if the common issues in the entire action—*i.e.*, every cause of action against every defendant—predominate over individual issues in the entire action.") (internal quotations omitted). "Even if common questions do not predominate over the individual questions so that class certification of

the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." *Id.* at 441 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

Certifying issues for class treatment is an efficient way to move litigation to resolution. *See, e.g.*, *Central Wesleyan College*, 6 F.3d at 185 (4th Cir. 1993) ("This court also has admonished district courts to take full advantage of the provision in [Rule 23(c)(4)] permitting class treatment of separate issues in order to promote the use of the class device and to reduce the range of disputed issues in complex litigation.") (internal quotations omitted). "The theory underlying the rule is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured even though other issues in the case may need to be litigated separately by each class member." Wright, *et al.*, Fed. Prac. & Proc. §1790.

In this case, the liability issues are best handled on a class-wide basis. The only issues that will require separate inquiry (and, as explained above, it is a mechanical inquiry only) relate to damages. Should the Court decline to grant class certification to the entire case (a conclusion which, for the reasons Plaintiffs explain above, would be erroneous), Rule 23(c)(4) grants this Court the discretion to proceed with class adjudication of the key issues establishing Liberty's liability. *See* Fed. R. Civ. P. 49 ("The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact."). After a fact-finder conclusively determines those issues, specific damages can be managed during a claims process, involving either a Special Master or juries. Any follow-on proceedings to determine damages would be far more efficient than re-trying the core liability questions hundreds or thousands of times. Thus, to the extent this Court determines that class certification under Rule 23(b) is inappropriate, the Court should grant class certification as to liability under Rule 23(c)(4).

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court issue an Order (i) certifying the proposed Class pursuant to Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, (ii) appointing the named Plaintiffs as Class Representatives, and (iii) appointing the undersigned counsel as Class Counsel, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

Dated:  September 18, 2020                                             Respectfully submitted,

/s/ *E. Kyle McNew*
E. Kyle McNew (VSB No. 73210)
J. Gregory Webb (VSB No. 38157)
Lisa S. Brook (VSB No. 35661)
**MICHIEHAMLETT**
310 4th Street, NE
P.O. Box 298
Charlottesville, Virginia  22902
Tel.:  434-951-7231
Fax:  434-951-7254
kmcnew@michiehamlett.com
gwebb@michiehamlett.com
lbrook@michiehamlett.com

Adam J. Levitt*
Amy E. Keller*
Laura E. Reasons*
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel.:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
lreasons@dicellolevitt.com

Matthew S. Miller*
**MATTHEW S. MILLER LLC**
77 West Wacker Drive, Suite 4500
Chicago, Illinois  60601
Tel.:  312-741-1085
mmiller@msmillerlaw.com

*Admitted Pro Hac Vice

**Counsel for Plaintiffs and the Proposed Class**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed using the Court's CM/ECF electronic filing system on September 18, 2020, which will cause a notice of such filing to all counsel of record.

/s/ *E. Kyle McNew*