CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/5/2022
JULIA C. DUDLEY, CLERK
BY:  s/ CARMEN AMOS
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| STUDENT A, STUDENT C, and STUDENT D, individually and on behalf of others similarly situated, | |
| *Plaintiffs*, | Case No.: 6:20-cv-00023 |
| v. | <u>MEMORANDUM OPINION</u> |
| LIBERTY UNIVERSITY, INC., d/b/a, LIBERTY UNIVERSITY, | Judge Norman K. Moon |
| *Defendant*. | |

This is a putative class action case brought by several students at Liberty University, seeking a refund for various fees and room and board they paid for the Spring 2020 semester. Plaintiffs argue that they and other class members did not receive the benefit of those on-campus activities and services that they paid for, when, they argue, Liberty effectively closed its campus that semester in response to the COVID-19 pandemic.

As this case is before the Court on Liberty's motion to dismiss, the Court must accept the truth of factual allegations pleaded in the amended complaint. So doing, the Court concludes that Plaintiffs have stated valid, plausible claims for breach of contract and unjust enrichment against Liberty under Virginia law. However, Plaintiffs' claims for conversion and that Liberty violated the Virginia Consumer Protection Act fail as a matter of law.

Background[1]

Liberty University is an evangelical Christian, liberal arts institution in Lynchburg,

Virginia. Am. Compl. ¶ 23, Dkt. 17. It began Spring semester classes on January 13, 2020,

*id.* ¶ 28, shortly before the COVID-19 pandemic first impacted Virginia. On March 12, 2020,

Virginia's then-Governor declared a state of emergency and on March 30, 2020, issued a "stay at

home" order for all Virginians. *Id.* ¶¶ 42–43 & n. 9–10.

Plaintiffs allege that from January to March 2020, Liberty leadership had "dismissed the

seriousness of the pandemic," including calling the response an "overreaction." *Id.* ¶ 38; *id.* ¶ 3.

Nonetheless, in March 2020, Liberty announced that on account of the COVID-19 pandemic, it

would "transition most residential classes to an online format starting … March 23 [2020]."

*Id.* ¶ 2.

The "students who lived in on-campus housing were not expressly forced to move out of

their housing." *Id.* Indeed, Plaintiffs allege that Liberty "purport[ed] to remain open while classes

ha[d] moved online." *Id.* But Liberty had "stopped providing the services and activities for which

Plaintiffs and the other Class members paid fees." *Id.* ¶ 5. For instance, Plaintiffs allege that they

and other class members had paid for the Spring 2020 semester "fees includ[ing] campus fees

and the cost of room and board," which fees included $3,780 - $4,450 for "dining plans," $4,750

to $8,000 per year in "housing," $285 in an optional "auto registration fee," $340 for a "student

health fee," $770 for the undergraduate "activity/student center fee" and $285 per semester for

the graduate students, "course fees" that varied by program, and specific "activity fees" for the

Divinity School, Law School, and College of Osteopathic Medicine (as well as other fees for the

---

[1] The following facts are alleged in Plaintiffs' amended complaint and are assumed to be true for purposes of resolving these motions. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (explaining standard of review).

College). *Id.* ¶ 31. Some students had also paid for parking decals, which fees Liberty refused to refund. *Id.* ¶ 32. While Liberty had "agreed to provide the services or activities that each fee was intended to cover," *id.* ¶ 33, Liberty "stopped providing the services and activities for which the Plaintiffs and other Class members paid fees," *id.* ¶ 5. Liberty "converted all meals to take-out only," "closed all indoor recreation and fitness centers," "moved all Convocations and Campus Church online," "ended student organization activities," "suspended team sports," "closed campus to visitors," "encouraged work from home for staff," "postponed commencement," and "prohibited gatherings of ten or more people." *Id.* ¶ 6. On or about March 23, 2020, Liberty had moved most of its residential classes to an online format. *Id.* ¶ 43. Accordingly, faced with a campus that had "effectively been shut down," Plaintiffs allege that "most students chose to leave campus." *Id.* ¶ 8.

Plaintiffs allege that Liberty has "refused to refund to students and their families the unused portions of the fees that they each paid to cover the costs of certain on-campus services and activities, which [were] no longer available to students." *Id.* ¶ 10. Any refunds provided were "a mere fraction" of what Liberty owes for the unused fees. *Id.* Plaintiffs allege that Liberty opted instead to offer a $1,000 credit as a "customer service measure," to students who chose not to return to their campus residence halls for the remainder of the Spring 2020 semester, which would be applied to Fall 2020 charges. *Id.* ¶¶ 12, 48. The credit was unavailable to students who were not returning to Liberty in Fall 2020. *Id.* ¶ 48. Eligible students had to decide whether to take the credit by March 28, 2020. *Id.* Otherwise, "Liberty has refused to provide its students and their families with *any* refund of the miscellaneous campus fees they paid for the Spring 2020 semester that were unused or for which they had not received a benefit." *Id.* ¶ 50. Liberty has rejected students' requests that Liberty return any campus fees. *Id.* ¶ 53.

Plaintiffs brought this putative class action against Liberty University seeking to recover the "costs of services and/or activities (including parking, room and board, campus fees, activity fees, and other fees) for the Spring 2020 academic semester." *Id.* ¶ 1. Plaintiffs allege that they lost the benefits of those services and activities on account of Liberty's response to the COVID-19 pandemic. *Id.*

This case is brought by three individual plaintiffs[2] on behalf of the putative class, identified as Student A, Student C, and Student D.[3] Student A is an out-of-state student, who "paid fees for the Spring 2020 semester," but will not receive benefits from those fees "because Liberty transitioned all of its classes online, shut down on-campus services and activities, and made it so that Student A ha[d] no reason to go to campus …." *Id.* ¶ 18. Student C and Student D are also out-of-state students, who "paid fees and the cost of room and board for the Spring 2020 semester, the benefits of which [they] will no longer receive, because Liberty transitioned all of its classes online, shut down on-campus services and activities, encouraged or forced students to move out of their on-campus housing, and made it so that [they] ha[d] no reason to go to campus." *Id.* ¶¶ 20–21. Students C and D had not returned to Liberty's campus since before Spring break. *Id.*

Plaintiffs allege that Student A "has not been offered any refund of the fees paid for the Spring 2020 semester." *Id.* ¶ 18. Students C and D were "not offered a sufficient refund of the Spring 2020 semester room and board costs, or any refund of the fees paid for the Spring 2020 semester." *Id.* ¶¶ 20–21.

---

[2] A fourth named plaintiff, Student B, filed a notice of voluntary dismissal of their claims in this case. Dkt. 57.

[3] Their ability to proceed anonymously is addressed later in this opinion.

Plaintiffs brought this lawsuit against Liberty, filing the operative amended complaint. *See* Am. Compl. Therein, Plaintiffs have brought four causes of action against Liberty: breach of contract, unjust enrichment, conversion, and lastly violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196 *et seq.*

Liberty filed two motions in response. First, Liberty filed a Motion to Strike, or in the alternative, Motion for a More Definite Statement. Dkt. 19. Second, Liberty filed a Motion to Dismiss. Dkt. 23. The parties have briefed both motions, Dkts. 20, 22, 31, 32, 35, 36, as well as Plaintiffs' Motion for Leave to File a Sur-reply, Dkts. 37, 38, and Liberty's Motion for Leave to file a Sur-reply, Dkts. 65, 66, 70, and the Court heard oral argument thereon. The parties have since filed numerous notices of supplemental authority, advising the Court of various courts around the Country that have ruled upon some similar claims against colleges and universities. The Court appreciates the capable briefing and argument of the parties, and these motions are ripe for resolution.[4]

Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*,

---

[4] The Court has since heard argument on Plaintiffs' motion for class certification, which will be addressed in a separate, later opinion.

556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and 'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4d 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King*, 825 F.3d at 212. However, the Court need not "accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). As the Fourth Circuit has held, Rule 12(e) "must be read in conjunction with Rule 8," *Hodgson v. Va. Bapt. Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973), and under Rule 8(a), a complaint need only contain three elements:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). Therefore, if "the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement." *Hodgson*, 482 F.2d at 824. Courts have held that a motion for a more definite statement is "designed to strike at unintelligibility rather

than simple want of detail," and thus the motion "will be granted only when the complaint is so vague and ambiguous that the defendant cannot frame a responsive pleading." *Pugh v. E.E.O.C.*, No. 13-cv-2862, 2014 WL 2964415, at *3 (D. Md. June 30, 2014) (quoting *Frederick v. Koziol*, 727 F. Supp. 1019, 1020–21 (E.D. Va. 1990)). For these reasons, "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small." 5C Charles Alan Wright & Arthur R. Miller, 5C Federal Practice & Procedure § 1376 (3d ed.).

Under Rule 12(f) of the Federal Rules of Civil Procedure, "a court may strike from any pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Fourth Circuit has explained that "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). A ruling on a motion to strike is one entrusted to a district court's discretion. *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 324 (4th Cir. 2018).

Motion to Dismiss

1. *Breach of Contract*

Liberty argues that Plaintiffs failed to state a claim for beach of contract. Dkt. 22 at 6–8; Dkt. 35 at 3–4. Liberty contends that Plaintiffs have only "vaguely" alleged that they "entered into contracts with Liberty" under which Plaintiffs would pay fees and "Liberty would provide services and make available activities to students." Dkt. 22 at 6 (quoting Am. Compl. ¶ 71). But, Liberty writes, Plaintiffs have not attached or identified any contracts encompassing those terms. Dkt. 22 at 6. In Liberty's view, Plaintiffs' identification of "examples" of fees students paid for the 2019–2020 academic year "fails to identify which fees Plaintiffs actually paid under their individual student contract(s) for the Spring 2020 semester, the amount of those fees, what they

7

were supposed to receive in return for those fees, and what services they did not receive that they were supposed to receive." *Id.* (citing Am. Compl. ¶¶ 18–21, 31–33). Thus, Liberty argues that Plaintiffs have failed to identify the breach of any identifiable promise or contractual provision that Liberty breached, which renders the allegation of breach of contract just a bare legal conclusion that should be dismissed. *Id.* at 6–7.

Plaintiffs contend that they stated a valid breach of contract claim. Dkt. 32 at 4–6. In Plaintiffs' telling, they have alleged "a very simple contract claim, supported by adequate and plausible factual allegations." *Id.* at 5. Namely, that "Liberty's students paid money in return for access to services or activities that each fee was intended to cover," but that Liberty "breached that contract by either materially altering the nature of those available services (*i.e.*, carry-out only dining) or eliminating them altogether (*i.e.*, the student recreation center)," but yet retained the students' money. *Id.* Plaintiffs emphasize Liberty's concession that it "does not dispute that various fees at issue in the Amended Complaint arise out of the contractual relationship between Liberty and each individual student." *Id.* at 5 (quoting Dkt. 22 at 9 n. 3).

"The elements of a breach of contract are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *MCR Fed., LLC v. JB&A, Inc.*, 808 S.E.2d 186, 195 (Va. 2017) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). In determining the existence of a contract, Virginia law follows familiar principles that "mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts." *Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007) (citation omitted). "A contract is legally enforceable only when an offer is accepted and valuable consideration exchanged." *Irving v. PAE Gov't Servs., Inc.*, 249 F. Supp. 3d 826, 837 (E.D. Va. 2017) (citation omitted). Therefore,

to allege the existence of an enforceable contract, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract." *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981); *see also R.K. Chevrolet, Inc. v. Hayden*, 480 S.E.2d 477, 480 (Va. 1997) ("A contract will be enforced if its obligations are reasonably certain.").

The Court concludes that Plaintiffs have plausibly stated a breach of contract claim. Plaintiffs have not, as Liberty argues, failed to allege reasonably certain material terms of their contractual agreement.

As to the first element (existence of a legally enforceable obligation of Liberty to Plaintiffs), Plaintiffs allege that they entered into contracts with Liberty providing that Plaintiffs and the other class members would pay fees, "and in exchange, Liberty would provide services and make available activities to students." Am. Compl. ¶ 71. Specifically, Plaintiffs allege that the fees for the Spring 2020 semester "included various campus fees and the cost of room and board." *Id.* ¶ 30. In some detail, Plaintiffs alleged fees for that semester included fees for "dining plans" for a cost of $3,780 - $4,450; "housing" for $4,750 - $8,000 per year; an "auto registration fee (optional)" of $285; a "student health fee" of $340; "course fees" which "vary per program"; an "Activity/Student Center Fee" of $770 for undergraduates, or $285 per semester for those in graduate school; and various "activity fees" for Liberty's School of Divinity, School of Law, and College of Osteopathic Medicine (as well as various accompanying fees for the latter). *Id.* ¶ 31. In addition, Liberty also had sold parking decals, which purchases Liberty refused to refund. *Id.* ¶ 32. Plaintiffs allege that, "[i]n return for these payments, Liberty agreed to provide the services or activities that each fee was intended to cover." *Id.* ¶ 33. Plaintiffs allege that those who "paid fees to cover the costs of services and/or activities (including parking, room and board, campus

fees, activity fees, athletic fees, and other fees) for the Spring 2020 academic semester at Liberty" as a result of Liberty's response "lost the benefits of the services and activities for which their fees were paid, without having those fees refunded to them." *Id.* ¶ 1.

In addition, and also relevant to the second element (the defendant's violation or breach of that obligation), Plaintiffs allege that while *they* paid such fees, *see, e.g.*, *id.* ¶¶ 18, 20–21, 30–31, 72, Liberty failed to fulfill its end of the bargain to provide such services or activities, *see, e.g.*, *id.* ¶¶ 1, 5, 18, 20–21, 73. Plaintiffs further explain how Liberty failed to provide many of such services, by, for example, "convert[ing] all meals to take-out only," "clos[ing] all indoor recreation and fitness centers," "mov[ing] all Convocations and Campus Church online," "end[ing] student organization activities," "suspend[ing] team sports," "clos[ing] the campus to visitors," "encourag[ing] work from home for staff," "postpon[ing] commencement," and "prohibit[ing] gatherings of ten or more people." *Id.* ¶ 6. Plaintiffs allege that they suffered damages in that they were unable to receive the benefits of campus fees and room and board, for which they had paid. *See id.* ¶¶ 18, 20–21, 30–31, 72–74. The Court further notes Liberty has acknowledged that it "does not dispute that various fees at issue in the Amended Complaint arise out of the contractual relationship between Liberty and each individual student." Dkt. 22 at 9 n. 3; Dkt. 35 at 5 (Liberty, writing that it "does not dispute that the fees at issue are part of the contractual relationship that Liberty has with each of its students").

The Court reiterates, on a motion to dismiss, Plaintiffs' complaint is not required to include "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and in making that determination, all factual allegations contained in the complaint are taken as true and all reasonable inferences drawn in Plaintiffs' favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir.

2016). Plaintiffs' contract claims may—in whole or in part—ultimately be subject to challenge upon consideration of any documents that describe in more detail the terms of payment of fees and provision of the on-campus services, activities and room and board. But here, Plaintiffs have identified in their amended complaint all the material terms of the contract that they allege they concluded with Liberty and that Liberty purportedly breached, and that they suffered economic damages as a result. At present, no more is required. *See, e.g.*, *Castillo-Gomez v. Convenience Car Care Ctr., Inc.*, No. 1:14-cv-651, 2014 WL 3544839, at *2 (E.D. Va. July 17, 2014); *Dodge v. CDW Gov. Inc.*, No. 1:09-cv-528, 2009 WL 1605010, at *4 (E.D. Va. June 5, 2009) ("An otherwise valid claim does not fail simply because Plaintiff did not attach a document to its complaint."); *Addison v. CNX Gas Co., LLC*, No. 1:10-cv-65, 2011 WL 4553090, at *8 (W.D. Va. May 13, 2011) (report & recommendation) (similar), *adopted by* 2011 WL 4527812, at *1 (W.D. Va. Sept. 28, 2021).

2. *Unjust Enrichment*

Plaintiffs' second claim is for unjust enrichment. Am. Compl. ¶¶ 75–80. Plaintiffs allege that they and other class members paid fees "which were intended to cover services and activities for the Spring 2020 semester," and that, "[i]n exchange, students were entitled to receive those services and activities for the entire semester." *Id.* ¶ 77. However, they allege that on or about March 23, 2020, "Liberty moved classes online and stopped providing services and activities the fees were intended to cover." *Id.* ¶ 78. Elsewhere, Plaintiffs described the services and activities at issue, including the range of cost for dining plans, housing, an optional auto registration fee, student health fee, course fees (that vary by program), an "activity/student center fee," School of Divinity and School of Law activity fees, and College of Osteopathic Medicine activity, lab, insurance and "first year" fees." *Id.* ¶¶ 30–31. Plaintiffs allege that Liberty has retained the fees

paid by Plaintiffs and other class members, "without providing the services and activities for which they paid and, as such, has been enriched." *Id.* ¶ 79. Accordingly, Plaintiffs contend that "[e]quity requires Liberty to return the unused, prorated portion of the fees paid by Plaintiffs" and other class members." *Id.* 80.

Liberty argues that Plaintiffs' unjust enrichment claim fails because they had alleged in count one "that express contracts exist that allegedly cover the same fees that Plaintiffs seek to recover in their unjust enrichment claim." Dkt. 22 at 9. Liberty "does not dispute that various fees at issue in the Amended Complaint arise out of the contractual relationship between Liberty and each individual student." *Id.* at 9 n. 3. Liberty argues that under Virginia law, "the existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *Id.* at 8–9 (quoting originally *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018)). Accordingly, because "Plaintiffs allege that express contract(s) with Liberty remain in effect and cover the same fees that form the basis of their unjust enrichment claim," Liberty argues that the unjust enrichment count must be dismissed. Dkt. 22 at 9.

Plaintiffs counter that, "while it is generally true that breach of contract claims and unjust enrichment claims are mutually exclusive at the remedy stage," they can be pled together in the alternative at the pleading stage of a case. Dkt. 32 at 7. Plaintiff cites Virginia authority for the proposition that, "broad statements such as 'there can be no unjust enrichment in contract cases' are 'plainly erroneous.'" *Id.* at 6 (quoting James *G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 648 (Va. 2020)) (citation omitted). Plaintiffs argue the validity, or the enforceability of any contract provisions are expected to be at issue—such as if Liberty does argue that its registration agreement with students "never envisioned or covered situations where performance is hindered

12

by a global pandemic," thereby putting at issue whether the benefit Liberty received (fees) would be "outside the scope of the contract." *Id.* at 7.

Unjust enrichment "is an implied contract action based upon the principle that 'one person … may not enrich himself unjustly at the expense of another.'" *CGI Fed. Inc.*, 814 S.E.2d at 190 (quoting *Rinehart v. Pirkey*, 101 S.E. 353, 354 (Va. 1919)). A claim for unjust enrichment in Virginia is available when (1) a plaintiff "conferred a benefit" on a defendant; (2) the defendant "knew of the benefit and should reasonably have expected to repay" the plaintiff; and (3) the defendant "accepted or retained the benefit without paying for its value." *T. Musgrove Constr. Co., Inc. v. Young*, 840 S.E.2d 337, 341 (Va. 2020). The measure of recovery for an unjust enrichment claim "is limited to the benefit realized and retained by the defendant." *Id.*

To be sure and as Plaintiffs concede, they would not be able to "simultaneously *recover* in contract and in equity." *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 809 (E.D. Va. 2017) (citing cases) (emphasis added). But it is a separate issue whether a plaintiff can be permitted to plead such counts in the alternative. *See* Fed. R. Civ. P. 8(d) (generally allowing pleading in the alternative). While the existence of an express contract "covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment," *CGI Fed., Inc.*, 814 S.E.2d at 190, the Supreme Court of Virginia has also explained that there is no per se bar on pleading unjust enrichment claims alongside contract claims. *James G. Davis Constr. Corp.*, 841 S.E.2d at 648 (writing that it is "plainly erroneous" to state "there can be no unjust enrichment in contract cases") (citing Restatement (Third) of Restitution and Unjust Enrichment, § 2, cmt. C, at 17)). For instance, when there is a question in a case about the applicability or enforceability of a contract, a plaintiff can plead contract and quasi-contract claims in the alternative. *See McPike*, 280 F. Supp. 3d at 809–10 (explaining that "it makes perfect sense for a plaintiff to plead quasi-

contractual claims in the alternative when the applicability or enforceability of the contract is in dispute," but "the rationale for alternative pleading disappears when neither party contests the applicability or validity of the contract").

This is not a case where neither party contests the "applicability and enforceability" of a contract. Rather, the "the applicability or enforceability" of a contract between Plaintiffs and Liberty governing the terms of Plaintiffs' payment of the specified fees and Liberty's retention thereof, appears to be very much in dispute. For instance, Liberty argues that "Plaintiffs have failed to allege the 'reasonably certain' terms of the *purported contract(s)* they entered into with Liberty, and thus, any conduct by Liberty that could constitute a breach of such contract(s)." Dkt. 22 at 8 (emphasis added).[5] Further, Liberty's concession about the existence of a contractual relationship is itself limited and equivocal, stating that: "Liberty does not dispute that *various fees at issue* in the Amended Complaint *arise out of the contractual relationship* between Liberty and each individual student." *Id.* at 9 n. 3 (emphases added). Later, Liberty wrote that it "does not dispute that the fees at issue are *part of the contractual relationship* that Liberty has with each of its students." Dkt. 35 at 5 (emphasis added). As Liberty has contested its liability under the contracts governing the students' payment of fees to Liberty, Plaintiffs "cannot be barred from arguing unjust enrichment in the alternative." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, at *6 (4th Cir. Aug. 31, 2021) (per curiam) (unpublished) (applying Virginia law).[6]  The D.C. Circuit also has considered this very issue—reversing the

---

[5] *See also* Dkt. 22 at 2 (arguing for dismissal on the basis that "the terms of the *allegedly breached contract* are not sufficiently pled") (emphasis added); Dkt. 35 at 4 (arguing that "Plaintiffs fail to identify which specific contract(s) they allegedly entered into with Liberty") .

[6] Given Liberty's position seeking dismissal of the breach of contract claim on grounds that the terms of the "purported" or "allegedly breached contract" were not sufficiently pleaded, the Court cannot conclude that its "concession" that "various fees at issue … *arise out of* the

district court's dismissal of students' unjust enrichment claims. *Shaffer v. George Washington Univ.*, 27 F.4th 754, 767 (D.C. Cir. 2022). The court acknowledged that, "insofar as the terms of the contracts govern the provision and displacement of in-person education and services, as well as the University's retention of tuition and fees, the contracts between Plaintiffs and the Universities may preclude an unjust enrichment claim." *Id.* (cleaned up). But that did not resolve the issue, because the plaintiffs brought "their unjust enrichment claims as an alternative ground of liability in the event the District Courts conclude that no viable contract governs the provision of in-person education and services." *Id.* And the court held that "[i]n these cases, where the nature and enforceability of any promises the Universities made remain unresolved, Plaintiffs' alternative claims for unjust enrichment may proceed past the pleadings stage," noting that "[t]he Federal Rules of Civil Procedure expressly allow parties to advance inconsistent and alternative theories of recovery at the pleadings stage." *Id.* Accordingly, the court concluded that "[b]ecause Plaintiffs plausibly allege they conferred a benefit—*i.e.*, their tuition and certain fee payments— to the University and that the Universities unjustly retained those benefits, Plaintiffs state claims for unjust enrichment." *Id.* at 769.

The Court concludes that, at the motion to dismiss stage of the case, Plaintiffs have adequately pleaded allegations of fact that, taken as true, would state a plausible unjust enrichment claim. Plaintiffs have pleaded that they conferred a benefit on Liberty as by the payment of "various campus fees and the cost of room and board," Am. Compl. ¶ ¶ 31; that Liberty knew of and took Plaintiffs' fees and agreed to provide services those fees were intended to cover (*i.e.*, dining plans, housing, campus auto registration, etc.), and should reasonably have

---

contractual relationship" between Liberty and student (or "*are part of*" it), demonstrate there is no dispute over the application and enforceability of the contract.

been expected to pay those fees back, *id.* ¶¶ 30–34; and that Liberty accepted that benefit (the fees) without providing the accompanying services or reimbursing the fees, *id.* ¶¶ 49–51. *See also id.* ¶¶ 1, 8–10, 13, 18, 20–21, 27–34, 49–51, 77–80. Plaintiffs properly pleaded this unjust enrichment count in the alternative, which may proceed past the pleadings stage.

    3. *Conversion*

Plaintiffs' third claim is for conversion. Am. Compl. ¶¶ 81–89. Therein, Plaintiffs allege that they and other class members "have a right to the services and activities that were supposed to be provided in exchange for their payments of fees to Liberty." *Id.* ¶ 83. Plaintiffs allege that Liberty "intentionally interfered with the rights of Plaintiffs and the other Class members" when it moved classes online, discontinued services and activities were meant to pay for, and thereby deprived them "of the right to the services and activities that their fees were intended to be used for." *Id.* ¶¶ 83–84.

In addition, Plaintiffs allege that Liberty unlawfully "retain[ed] the fees paid by Plaintiffs and other Class members." *Id.* ¶ 84. For example, Student B and other class members "demanded the return of the pro-rated, unused fees for the remainder of the Spring 2020 semester." *Id.* ¶ 86. Thus, Plaintiffs allege that they Liberty caused them monetary damages "in that [Plaintiffs] paid fees for services and activities that will not be provided," and they contend that they "are entitled to the return of pro-rated, unused portion of the fees paid, through the end of the semester." *Id.* ¶¶ 88–89.

Liberty argues that Plaintiffs' allegations that it "wrongfully converted their right to receive in-person instruction and participate in activities on campus" is "precisely the type of undocumented intangible assets that cannot support a conversion claim." Dkt. 22 at 11 (emphases omitted). Further, Liberty contends that while money can "in certain instances,

16

support a conversion claim, the money must take the form of an identifiable fund, such as a bag of money or identifiable settlement proceeds." *Id.* (internal quotation marks and citations omitted). Liberty argues that Plaintiffs have failed to include such allegations of an identifiable fund in their complaint. *Id.* Plaintiffs argue, by contrast, that "[t]he fees withheld by Liberty were meant for a specific, identifiable purpose—to provide access to the connected services and activities." Dkt. 32 at 8. Thus, Plaintiffs contend, these facts sufficiently establish a claim of conversion under the Supreme Court of Virginia's decision in *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 443 (Va. 2003), in which the court held that failure to turn over settlement proceeds constituted conversion. Dkt. 32 at 8.

Conversion is "any wrongful exercise or assumption of authority … over another's goods, depriving him of their possession; and any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Mackey v. McDannald*, 842 S.E.2d 379, 387 (Va. 2020) (citation omitted, cleaned up). Although a claim for conversion "typically applies only to tangible property," Virginia law does recognize a claim for conversion of "intangible property rights that arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond"—but to establish such claim, the plaintiff "must have both a property interest in and be entitled to immediate possession of the documented intangible property." *Id.* (quotation marks and citations omitted). "The tort of conversion can also apply to money, including settlement proceeds wrongfully withheld." *Grayson v. Westwood Buildings L.P.*, 859 S.E.2d 651, 679 (Va. 2021). However, "[u]nder Virginia law, money can only be the subject of a conversion claim in limited circumstances, including when it is part of a segregated or identifiable fund." *Northstar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1020 (E.D. Va. 2018) (internal quotation marks and citation omitted).

Plaintiffs have not pleaded a plausible conversion claim under Virginia law. Liberty's alleged deprivation of Plaintiffs' "*right to the services and activities* that their fees were intended to be used for," Am. Compl. ¶ 85 (emphasis added), *id.* at ¶ 84, does not support a claim for conversion. This does not claim that Liberty engaged in any "wrongful exercise or assumption of authority … over another's *goods*"—which "typically applies only to tangible property—neither over any "*intangible property rights* that arise from or are merged with a document, such as a valid stock certificate, promissory note, or bond." *Mackey*, 842 S.E.2d at 387 (emphases added).[7]

Plaintiffs also alleged that Liberty unlawfully retained "the fees paid by Plaintiffs and other Class members," including refusing to return the "pro-rated, unused fees for the remainder of the Spring 2020 semester." Am. Compl. ¶¶ 84, 86. However, Plaintiffs' conversion claim fails with respect to the fees too. In Virginia, "money can only be subject of a conversion claim in limited circumstances, including when it is part of a segregated and identifiable fund." *Stallard v. Bank of Am., N.A.*, 137 F. Supp. 3d 867, 876 (E.D. Va. 2015) (citing *Jones v. Countrywide Home Loans, Inc.*, No. 4:09-cv-162, 2010 WL 6605789, at *5 (E.D. Va. Aug. 24, 2010)); *Fed. Ins. Co. v. Smith*, 63 F. App'x 630, 638 (4th Cir. 2003) (explaining, "[s]o long as money is kept separate and identifiable, it can be converted."). Plaintiffs' complaint fails to include factual allegations

---

[7] *See Omori v. Brandeis Univ.*, 533 F. Supp. 3d 49, 56 (D. Mass. 2021) (holding that plaintiffs' contention "that Brandeis has converted their right to in-person education … cannot support a claim for conversion because such rights do not constitute 'personal property' for the purpose of that tort"); *accord Raimo v. Washington Univ. in St. Louis*, No. 4:20-cv-634, 2022 WL 796239, at *13 (E.D. Mo. Mar. 16, 2022) (holding that plaintiffs' matriculation documents at the university "are not the type of document with which intangible rights may be merged for purposes of a conversion claim," and therefore plaintiffs' complaint "fails to state a claim for conversion"); *Burt v. Bd. of Trustees of Univ. of Rhode Island*, 523 F. Supp. 3d 214, 225 (D.R.I. 2021) ("Simply, Plaintiffs contracted with their universities to exchange tuition for their courses and credit towards a degree, which the universities delivered. The exchange does not give them any possessory rights to any specific university facilities or other in-person offerings."), *appeal filed* (Apr. 27, 2022).

that, taken as true, would establish that the fees (or portions thereof) sued over were part of any segregated, specific, or otherwise identifiable fund. *See Alberto*, 332 F. Supp. 3d at 1020 ("A segregated or identifiable fund is one separate from the defendant's general funds and one to which plaintiff is entitled.") (internal quotation marks and citation omitted). The allegations here are far afield from the circumstances in the *PGI* case, in which a settling party deposited $250,000 in settlement proceeds into its account, and failed to honor its agreement to share that settlement with a company in partnership with it. *See PGI, Inc.*, 576 S.E.2d at 443. Moreover, the Court notes that the vast majority of non-Virginia precedent addressing similar claims against universities or colleges for failure to return some portion of tuition or on-campus related fees on account the COVID-19 pandemic has similarly concluded that conversion claims similarly fail on this or other grounds.[8]

### 4. *Virginia Consumer Protection Act*

Finally, in count four, Plaintiffs allege that Liberty violated the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196 *et seq. See* Am. Compl. ¶¶ 90–98. In Plaintiffs' VCPA count, they argue that Liberty "pretextually claimed that its campus would remain 'open,' while at the same time materially altering or completely eliminating the services that would be provided to its students." Am. Compl. ¶ 94. Plaintiffs allege that, while falsely describing its

---

[8] *See Shaffer*, 27 F.4th at 770 (holding that "[t]he conversion claim fails because Plaintiffs do not plausibly allege a possessory interest in a specific identifiable fund of money") (citation omitted); *Omori*, 533 F. Supp. 3d at 56 (holding that, "[b]ecause plaintiffs seek a refund of only some unspecified, pro-rated portion of their payments rather than specific funds in which they have a possessory interest, … they have not stated a claim for conversion"); *Beck v. Manhattan Coll.*, 537 F. Supp. 3d 584, 590–91 (S.D.N.Y. 2021) (holding that, "[t]he partial refunds Ms. Beck seeks are not specific, identifiable funds—they are undetermined amounts of money representing a portion of the unliquidated, unearned benefit the college obtained from the absence of student-related expenses which should be distributed to the class," thereby failing to state a claim for conversion).

campus as "open," and "materially reducing or eliminating the services provided on an open campus," Liberty engaged in practices prohibited by the VCPA. *Id.* ¶ 96. Plaintiffs argue that these prohibited practices include "misrepresenting the characteristics and benefits of services," "using deception, false pretense, and misrepresentation in connection with a consumer transaction," "advertising services with the intent not to sell them as advertised," and lastly "making misleading statements of fact concerning the reasons for or existence of a price reduction." *Id.* The last allegedly prohibited practice arose out of Liberty's announcement that it would, as a "customer service measure," offer a limited credit to students who did not return to their on-campus residence hall for the remainder of the Spring 2020 semester." That was $1,000 credited toward Fall 2020 charges, or graduating students got $1,000 credited to their account. *Id.* ¶¶ 48, 95.

Liberty first argues that the "economic loss rule" precludes Plaintiffs' VCPA claim, because "Plaintiffs fail to allege a duty that exists independently of the parties' contract(s)." Dkt. 22 at 13. Liberty contends that the alleged misrepresentations occurred "*after* Plaintiffs paid Spring 2020 semester fees and entered into contract(s) with the University," and thus Plaintiffs could not show that Liberty's statement "induced them to pay fees for the Spring 2020 semester or affected any other aspect of their purported consumer transactions with the University." *Id.* at 14. Thus, "[b]ecause the duty alleged breached by Liberty to provide certain services and activities exists solely by virtue of the parties' contract(s)," Liberty argues that the economic loss rule bars Plaintiffs' VCPA claim. *Id.* Second, Liberty contends that Plaintiffs have failed to allege the elements of a plausible VCPA claim, including the element that Plaintiffs relied on Liberty's purported misrepresentations and that they suffered damages as a result. *Id.* at 15–17.

For their part, Plaintiffs argue that they stated a valid and plausible claim under the VCPA. Dkt. 32 at 9–21. At the outset, Plaintiffs appear to concede that their claims "Liberty has kept the students' money despite not providing the services that they money was supposed to buy," is the subject not of the VCPA claim, but rather "the breach of contract, unjust enrichment, and conversion claims." *Id.* at 9. Rather, they argue that Plaintiffs that their VCPA claim "focus[es] on Liberty's actions and statements surrounding its decision to keep that money." *Id.* at 9. They challenge Liberty's alleged "improperly and unfairly whipsawing its students with confusing, often contradictory statements" about whether Liberty remained "open," putting them in an "untenable situation" whether "to accept the so-called 'customer service' measure of a $1,000 credit against future costs." *Id.* at 10. Specifically, they contend that "students had to make this decision" whether to accept the $1,000 credit, during a five-day period that "Liberty was trumpeting that campus remained 'open' and was downplaying the severity and scope of the pandemic." *Id.* Plaintiffs argue that therefore "the credit would take away a student's choice about the future—the only way to realize the value would be to commit to returning to Liberty the following semester, thus allowing Liberty to secure even more money for itself." *Id.*

Plaintiffs argue that the economic loss rule does not bar this claim because "Liberty's duty to refrain from justifying keeping the students' money now by misleadingly pointing to the future credit does not flow from the contract. It flows from the VCPA." *Id.* at 11. Moreover, Plaintiffs argue that they pleaded a plausible VCPA claim focusing on "Liberty's statements surrounding campus being 'open' and about the future credit," which they contend were "deceptive and misleading in light of the actual situation on campus," and designed to provide a "false justification for keeping the students' money." *Id.*

The VCPA was passed "to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197. The Act prohibits certain "fraudulent acts or transactions by a supplier in connection with a consumer transaction." *Id.* § 59.1-200(A). To state a claim under the VCPA, a plaintiff must allege: "(1) a fraudulent act (2) by a supplier (3) in a consumer transaction." *BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 335 F. Supp. 3d 416, 424 (E.D. Va. 2018); *see also Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015). A VCPA claim is "distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters., Inc.*, 773 S.E.2d 366, 368 (Va. 2015). The VCPA proscribes a range of conduct by suppliers in consumer transactions that 'extends considerably beyond fraud." *Owens v. DRS Automotive Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014). The VCPA is remedial legislation that must be construed "liberally, in favor of the injured party." *Ballagh*, 773 S.E.2d at 368. Plaintiffs' "VCPA claim would be governed by the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure," meaning that they were "required to state with particularity the circumstances constituting fraud or mistake," including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015) (unpublished) (per curiam).

The Court concludes that Plaintiffs have failed to plead a plausible VCPA claim. Plaintiffs' claims, to the extent they would concern Liberty's improper *retention of the fees already collected*, are a matter for the breach of contract or unjust enrichment claims, not the VCPA claim based on Liberty's *later* alleged misrepresentations. *See, e.g.*, *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988) (citing *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91 (Va. 1985)) ("*Colonial Ford* distinguishes between a statement that is

false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract."). Plaintiffs appear to acknowledge this principle of Virginia law when they write that their "VCPA claims do not merely spring from the fact that Liberty has kept the students' money despite not providing the services that the money was supposed to buy. That is dealt with by the breach of contract, unjust enrichment, and conversion claims." Dkt. 32 at 9. And there is no argument that Liberty initially collected the various fees at issue in bad faith or with knowledge that it did not at that time intend to fulfill its provision of services accompanying those fees. *See id.* at 8 ("there is no allegation that Liberty charged the fees before the semester began in bad faith").

Plaintiffs rather focus their VCPA claim on Liberty's alleged "confusing and misleading guidance and representations both about the status of the institution and the nature of the danger posed by COVID-19." *Id.* at 9. They further focus on the "customer service" measure of a $1,000 credit, which they argue was initiated alongside those alleged misrepresentations that campus was "open," thereby prompting students to "commit to returning to Liberty the following semester, thus allowing Liberty to secure even more money for itself." *Id.* at 10. The problem with this argument is that it lacks support in the allegations of the amended complaint. Plaintiffs are required to plead reliance and damages as elements of their VCPA claim. *Owens*, 764 S.E.2d at 260–61; *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 658 (W.D. Va. 2013) ("Virginia courts have consistently held that reliance is required to establish a VCPA claim.") The amended complaint simply does not include factual allegations that (as argued), *Plaintiffs* relied on such alleged misstatements, and thereby suffered further economic losses or other damages (i.e., further payments to Liberty), as a result of their reliance on those alleged misstatements. *See, e.g.*, Am. Compl. ¶¶ 1, 5–6, 10, 12–15, 18–21, 27–34, 48–51, 90–98. And the mere allegation

23

that, "[a]s a result of the above prohibited practices by Liberty, Plaintiffs and class members have suffered and continue to suffer financial losses," is a conclusory statement of an element of the offense, without factual enhancement, which does not suffice. *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). For these reasons, Plaintiffs' VCPA claim fails.

*     *     *

In summary of the Court's analysis on Liberty's motion to dismiss, the Court has concluded that two of Plaintiffs' claims against Liberty proceed past the motion to dismiss stage, namely, Plaintiffs' claims for breach of contract (count one) and unjust enrichment (count two). The Court has determined that Plaintiffs' remaining claims for conversion (count three) and for violation of the VCPA (count four), fail to state a plausible claim to relief and accordingly must be dismissed.

Motion to Strike or For More Definite Statement

The Court next will take up Liberty's motion to strike or, in the alternative, for a more definite statement. *See* Dkt. 19. With respect to the portion of that motion requesting a more definite statement under Rule 12(e), Liberty argues that to be able to adequately respond to the complaint, Liberty needs Plaintiffs to "reveal their identities," "specific which fees they paid for the Spring 2020 semester," and "identify the terms of the contract(s) that they claim Liberty breached." *Id.* at 7. Liberty argues that "[n]o two students are alike," and may take "different courses, participate[ ] in different activities," and have "different scholarships, grants, and payment methods that affect the amount allegedly owed under the contract(s)." *Id.* Liberty contends that, "[w]ithout this basic information, Liberty cannot meaningfully respond to the Amended Complaint." *Id. See also* Dkt. 36 at 12 (similar).

24

Liberty's argument lacks merit. Rule 12(e) permits a party to request a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e) "must be read in conjunction with Rule 8," *Hodgson*, 482 F.2d at 822, which requires a complaint to simply contain (1) a short and plain statement of the grounds for the court's jurisdiction, (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) a demand for the relief sought, Fed. R. Civ. P. 8(a). Thus, if "the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement." *Hodgson*, 482 F.2d at 824. Plaintiffs' amended complaint was not so vague or so ambiguous that Liberty could not have been reasonably required to answer. Indeed, as explained above, the Court determined that several of Plaintiffs' claims have met Rule 8(a)'s requirements and proceed beyond Liberty's motion to dismiss under Rule 12(b)(6). Moreover, Rule 12(e) is "designed to strike at unintelligibility rather than simple want of detail," and thus the motion "will be granted only when the complaint is so vague and ambiguous that the defendant cannot frame a responsive pleading." *Pugh*, 2014 WL 2964415, at *3 (quoting *Frederick*, 727 F. Supp. at 1020–21). To the extent Plaintiffs might have pleaded more, that would reflect a "simple want of detail" rather than "unintelligibility" in their amended complaint. Put simply, the amended complaint does not fall within the "quite small" class of pleadings that are appropriate subjects for a Rule 12(e) motion. *See* 5C Charles Alan Wright &  Arthur R. Miller, 5C Federal Practice & Procedure § 1376 (3d ed.).

In this motion, Liberty also challenges the named Plaintiffs' attempt to litigate this action anonymously. Specifically, Liberty contends that Plaintiffs have not provided such reasons as would "rebut the presumption of openness that judicial proceedings enjoy." Dkt. 20 at 2, 5.

Plaintiffs responded and attached exhibits and declarations, which they contend establish the relevant factors weigh in favor their request. Dkt. 31. The Court will address the parties' specific arguments in the context of its analysis of the relevant factors. Against a backdrop of "general presumption of openness of judicial proceedings,"  the Fourth Circuit has explained that only in "rare" cases are requests to so proceed warranted. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Thus, the Fourth Circuit advises that "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014). This decision is committed to the trial court's discretion. *James*, 6 F.3d at 238. All agree that *James* supplies the relevant analytical framework. *See* Dkt. 20 at 6; Dkt. 31 at 5–9; Dkt. 36 at 3–12. On this record, consideration of these factors supports Plaintiffs' request at present.

To be sure, several *James* factors weigh somewhat against Plaintiffs' request. The first is "[w]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature." *Id.* at 238. On the latter issue, Plaintiffs seek reimbursement from Liberty for room and board, auto registration, student health, activity or student center fees, or parking passes, and other such fees, Am. Compl. ¶¶ 30–32, which are not matters of a "sensitive and highly personal nature" as would implicate certain privacy interests, *James*, 6 F.3d at 238; *compare Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-378, 2022 WL 972629, at *2 (W.D. Va. Mar. 30, 2022) (sexual assault cases "involve[ ] sensitive and highly personal facts that can invite harassment and ridicule," thereby satisfying this factor). (But that is not to say

Plaintiffs are *only* seeking to avoid annoyance and criticism that may accompany any litigation). Another factor concerns "the ages of the persons whose privacy interests are sought to be protected." *James*, 6 F.3d at 638. Plaintiffs are college students. Am. Compl. ¶¶ 18, 20–21. And Plaintiffs concede that "age is not a direct factor in this case." Dkt. 31 at 6. There is no argument that the named Plaintiffs were minors at the time of the filing of the complaint, *see Doe v. Pittsylvania Cnty., Va.*, 844 F. Supp. 2d 724, 729 (W.D. Va. 2012), still, courts have held that even younger college students "may still possess the immaturity of adolescence," *see Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-cv-170, 2018 WL 5929647 at, *3 (W.D. Va. Nov. 13, 2018). And yet another factor concerns whether suit is brought against a governmental or private party—here, Liberty is a private party. *See James*, 6 F.3d at 238.

Yet on this record, the fact that those *James* factors weigh somewhat against Plaintiffs' request in this case is not determinative. The remaining factors and reasons proffered suffice to counterbalance those factors. Significantly, named Plaintiffs argued and provided evidence to support more than a mere "general fear" of retaliation or mere embarrassment against students for taking the specific positions that Plaintiffs have in this litigation. *See Doe v. Pittsylvania Cnty.*, 844 F. Supp. 2d at 733; *see also* Dkt. 31-2 ¶¶ 10–17, 20–21, 22; Dkts. 31-3 – 31-5; *accord* Dkt. 31-7 ¶¶ 24, 26–27. Plaintiffs' argument is grounded not only in statements of former leadership of Liberty, *see* Am. Compl. ¶¶ 2–4, 22, 38, 55–58, as Liberty had argued. The Court also considers the fifth *James* factor, concerning potential "unfairness to the opposing party," *James*, 6 F.3d at 238, as being significantly mitigated by named Plaintiffs' willingness to provide names and other discovery to certain Defense counsel and limited persons at Liberty so that they could prepare its defense. *See, e.g.*, Dkts. 37, 37-1. Having so found, Liberty's request to strike

or to move for a more definite statement on this basis will be denied. *See* Dkt. 19. The Court will permit Plaintiffs to so proceed under their pseudonyms at this time.[9]

<u>Conclusion</u>

For the reasons set forth above, the Court has determined that Plaintiffs' amended complaint includes sufficient factual allegations that, taken as true, state a plausible claim for breach of contract and for unjust enrichment. However, the amended complaint fails to state a plausible conversion or VCPA claim. Accordingly, Liberty's motion to dismiss will be granted in part and denied in part, to that extent. The Court has also concluded that Liberty's motion to strike, or, in the alternative, for a more definite statement will be denied.

The Clerk of Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this <u>5th</u> day of May, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] To the extent that any party has argued or will argue at a later stage of this case (such as at trial) that circumstances have changed such that Plaintiffs' names require disclosure, the Court will take up the issue at that time in considering such motion. *See* Dkt. 89 at 23.